[Cite as *Ettayem v. H.E.R., L.L.C.*, 2020-Ohio-4647.]

COURT OF APPEALS
DELAWARE COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| ASHRAF A. ETTAYEM | : | JUDGES: |
| | : | |
| | : | Hon. William B. Hoffman, P.J. |
| Plaintiff-Appellant | : | Hon. Patricia A. Delaney, J. |
| | : | Hon. Earle E. Wise, Jr., J. |
| -vs- | : | |
| | : | Case No. 19 CAE 12 0070 |
| | : | |
| H.E.R., LLC, ET AL. | : | |
| | : | |
| | : | |
| Defendants-Appellees | : | O P I N I O N |

CHARACTER OF PROCEEDING:     Appeal from the Delaware County Court
of Common Pleas, Case No. 18 CV H
12 0690

JUDGMENT:     AFFIRMED

DATE OF JUDGMENT ENTRY:     September 28, 2020

APPEARANCES:

For Plaintiff-Appellant:

ASHRAF A. ETTAYEM, PRO SE
1195 BREAKERS COURT
WESTERVILLE, OHIO 43082

For Defendants-Appellees:

MARK R. METERKO
1650 LAKE SHORE DRIVE, SUITE 150
COLUMBUS, OHIO 43204

NATHAN H. BLASKE
SHANNON O'CONNELL EGAN
255 EAST FIFTH STREET, SUITE 1900
CINCINNATI, OHIO 45202

*Delaney, J.*

{¶1} Appellant Ashraf Ettayem, pro se, appeals the May 15, 2019 and November 27, 2019 judgment entries of the Delaware County Court of Common Pleas in this foreclosure-related action concerning household furnishings.

**FACTS AND PROCEDURAL HISTORY**

{¶2} On December 29, 2004, Ettayem executed a Promissory Note in favor of America's Wholesale Lender and both he and his wife Natasha Ettayem executed a Mortgage in favor of Mortgage Electronic Registration Systems, Inc., solely as nominee for America's Wholesale Lender for $472,000.00. The Mortgage was subsequently assigned to Appellee The Bank of New York Mellon, as Trustee for the Certificate holders of CWMBS, Inc., CHL Mortgage Pass-Through Trust 2005-1, Mortgage Pass-Through Certificates, Series 2001-1 (BONYM) (fka The Bank of New York) in May 2012

{¶3} On September 19, 2012, BONYM filed a complaint in foreclosure in the Delaware County Court of Common Pleas. Ultimately on March 6, 2014, a final Order granting BONYM judgment on the Note and decree in foreclosure was issued. Ettayem appealed the order and this Court affirmed on October 8, 2014. *The Bank of New York Mellon, fka The Bank of New York, as Trustee, v. Ettayem, et al.,* 5th Dist. Delaware No. 15 CAE 01 0006, 2015-Ohio-4157.

{¶4} A Notice of Sheriff Sale was posted on July 28, 2014. On August 8, 2014, Ettayem filed an emergency motion to stay the judgment for foreclosure and the sheriff's sale. On August 12, 2014, the trial court granted the motion to stay, but ordered the stay was not effective until Ettayem posted a supersedeas bond. Ettayem did not post the bond.

{¶5}   The real property was sold at sheriff's sale to BONYM on August 13, 2014.

{¶6}   On September 3, 2014, Ettayem filed a motion to set aside the sheriff's sale and objected to the confirmation of sale. The trial court held a hearing on the motion on September 23, 2014.  On October 14, 2014, the trial court denied Ettayem's motion to set aside the sheriff's sale and confirmed the sheriff's sale of August 13, 2014.  Ettayem appealed and this Court affirmed on October 2, 2015.  *Bank of New York Mellon v. Ettayem*, 5th Dist. Delaware No. 15 CAE 01 0006, 2015-Ohio-4157.

{¶7}   On October 12, 2016, Ettayem filed a civil complaint in the Delaware County Court of Common Pleas, Case No. 16 CV H 10 0624, alleging claims against H.E.R. LLC, and William Funtjar, a real estate broker, stemming from actions that occurred on October 12, 2014, in which the subject property was listed for sale, the locks changed on the doors, and Ettayem's personal property allegedly removed.

{¶8}   On May 26, 2017, Ettayem amended the complaint to name BONYM and Shellpoint Mortgage Servicing (Shellpoint) as defendants. The parties pursued discovery, and relevant to this appeal, Ettayem issued a notice to take the deposition of BONYM and Shellpoint through their representative(s) on August 25, 2016.  On that date, Ettayem conducted the deposition of a Shellpoint representative, which is the servicing agent of BONYM.

{¶9}   On October 11, 2017, all defendants filed motions for summary judgment. Ettayem sought and was granted an extension of time to respond to the motions. However, he voluntarily dismissed the action on December 7, 2017.

{¶10} Ettayem refiled the instant lawsuit on December 7, 2018 against the same defendants who answered the complaint and then proceeded to refile the same motions

for summary judgment in April 2019. Ettayem requested another extension of time to respond and he issued another notice of deposition to take the deposition of a BONYM representative. BONYM filed a motion to quash the notice of deposition and for a protective order against further discovery. The trial court granted the motion but gave Ettayem further extensions of time to respond the dispositive motions, which he ultimately did on May 31, 2019.

{¶11} In a lengthy opinion, the trial court granted summary judgment to the defendants on all counts of Ettayem's refiled complaint.

{¶12} Ettayem timely appealed and asserts the following two assignments of error for our review:

**ASSIGNMENTS OF ERROR**

{¶13} "I. THE TRIAL COURT ERRED IN STAYING DISCOVERY.

{¶14} "II. THE TRIAL COURT ERRED IN GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT COLLECTIOVLEY (SIC)."

**I.**

{¶15} Ettayem's first assignment of error argues the trial court erred in staying discovery in the refiled case. It is difficult to discern from Ettayem's brief his specific argument in this regard, but it appears to this Court that Ettayem faults counsel for BONYM/Shellpoint for not cooperating or complying with his notice of deposition, which then "precluded" him from prosecuting his claims properly. Appellant's Brief, p. 18.

{¶16} Civ.R. 26(C) provides: "Upon motion by any party or by the person from whom discovery is sought, and for good cause shown, the court in which the action is pending may make any order that justice requires to protect a party or person from

annoyance, embarrassment, oppression, or undue influence or expense, including one or more of the following: (1) that the discovery not be had * * *."

{¶17} The trial court issued a protective order to prevent the deposition. The decision to grant or deny a protective order is within the trial court's discretion. *Scott Processing Sys., Inc. v. Mitchell,* 5th Dist. Stark No. 2012CA00021, 2012-Ohio-5971, ¶21. Absent an abuse of discretion, an appellate court may not overturn the trial court's ruling on discovery matters. *Id.* In order to find an abuse of discretion, the appellate court must determine the trial court's decision was unreasonable, arbitrary, or unconscionable. *Id.*

{¶18} BONYM argues Ettayem was attempting to conduct a second deposition on the same subject matter in the original case. BONYM points out that Ettayem had already deposed a representative of Shellpoint – BONYM's servicing agent, in the original case. The Shellpoint representative explained during her deposition that no one at BONYM would have personal knowledge of the mortgage, property maintenance, or other relevant information, because BONYM contracted with Shellpoint to service the mortgage for BONYM. Consequently, BONYM filed a protective order so that it did not have to bear the additional burden and expense of submitting to a duplicative deposition, particularly since it involved traveling from out-of-state.

{¶19} The trial court agreed and further found that Ettayem had not shown any reason why he could not present facts essential to justify his opposition to the motions for summary judgment and denied his request under Civ.R. 56(F) for a continuance to conduct discovery.

{¶20} The record reflects BONYM and Shellpoint filed a joint answer, a joint motion for summary judgment, and are represented by the same legal counsel. BONYM

held the mortgage as a trustee and had contracted with Shellpoint to service the mortgage loan. Shellpoint, as servicer, was responsible for, among other things, receiving and crediting mortgage payments, managing the foreclosure and sale of the property, managing the maintenance and protection of the property, managing BONYM's purchase at the sheriff's sale, and managing the ultimate sale of the property to a third-party purchaser. Affidavit of Amber Knight Costello, ¶1, filed April 9, 2019. BOYNM stated there was no deponent who would have personal knowledge of the facts of this case from which to testify beyond those already testified to in the prior case.

{¶21} In the context of this refiled case, the trial court acted within its discretion to regulate discovery, despite the absence of a case scheduling order, as Ettayem failed to provide sufficient reasons why additional discovery was necessary to respond to the issues presented by the BONYM/Shellpoint's motion for summary judgment.

{¶22} Accordingly, the first assignment of error is overruled.

II.

{¶23} The second assignment of error contests the granting of summary judgment. In a very thorough written judgment, the trial court granted summary judgment to the defendants on all counts of Ettayem's complaint.

{¶24} Our review of the briefs and the record convinces us that the trial court's November 27, 2019 judgment fully addressed the relevant issues and law, and that the trial court did not err by granting summary judgment to Appellees. We therefore affirm the summary judgment for the reasons stated in the court's opinion, which we adopt and set forth as an appendix to this opinion.

{¶25} Accordingly, the second assignment of error is overruled.

## CONCLUSION

{¶26} The judgment of the Delaware County Court of Common Pleas is affirmed.

By:  Delaney, J.,

Hoffman, P.J. and

Wise, Earle, J., concur.

**Appendix**

IN THE COURT OF COMMON PLEAS OF DELAWARE COUNTY, OHIO

| | | |
|---|---|---|
| Ashraf A. Ettayem, | : | |
| Plaintiff, | : | |
| -vs- | : | Case No. 18 CV H 12 0690 |
| H.E.R. LLC, et al., | : | |
| Defendants. | : | |

### Judgment Entry (1) Granting Defendants Bank of New York Mellon and Shellpoint's 4/9/19 Motion for Summary Judgment and (2) Granting Defendants HER, LLC and William Funtjar's 4/12/19 Motion for Summary Judgment

This case is before the Court on the motion for summary judgment filed by the Bank of New York Mellon and Shellpoint Mortgage Servicing on April 9, 2019. This case is also before the Court on the motion for summary judgment filed by HER, LLC ("HER") and William Funtjar ("Funtjar") on April 12, 2019.

**Factual and Procedural History**

In 2004, the Plaintiff, Ashraf Ettayem and Natasha Ettayem executed a mortgage and purchased a home at 6040 Teasel Drive, Westerville, Ohio ("the property" or "the real property"). (Costello Aff. ¶ 7, Exs. A, B, filed 4/9/19.) In May 2012, the property's mortgage and note were assigned to The Bank of New York Mellon ("BONYM"). On behalf of BONYM, Shellpoint Mortgage Servicing ("Shellpoint") has serviced the property's mortgage ever since. (*Id.* ¶¶ 1.)

In the "Uniform Covenants" section of the mortgage, Ettayem agreed to a covenant to "pay when due[,] the principal of, and interest on, the debt evidenced by the

1

TERMINATION CODE ___18___

Note." (Costello Aff. Ex. B at ¶ 1.). Ettayem authorized BONYM, as lender, to protect the property in the event that Ettayem defaulted on his mortgage or left the property vacant. Section 9 of the mortgage specifically grants BONYM the right – should Ettayem fail to perform all of the covenants of the mortgage – to "do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value, and securing and/or repairing the Property." (*Id.* at ¶ 9.)

Ettayem fell behind on his payments, and BONYM filed a foreclosure action against Ettayem on September 19, 2012. (Ettayem 4/11/2017 Dep. 33-34, filed 4/12/19.) In March 2014, this Court granted summary judgment to BONYM and issued an entry and decree in the foreclosure that Ettayem had defaulted on the note and mortgage. (Costello Aff. Ex. C.) This Court ordered that the property be sold at a sheriff sale and that Ettayem pay BONYM $437,928.85. (Costello Aff. ¶ 8, Ex. C) Ettayem unsuccessfully appealed the judgment. *Bank of New York Mellon v. Ettayem*, 5th Dist. Delaware No. 15CAE040020, 2014-Ohio-4487, ¶ 37 (affirming March 2014 foreclosure judgment).

Authorized by BONYM, Shellpoint hired Mortgage Contracting Services, LLC ("MCS") to protect BONYM's post-default interest in the property by maintaining it and making reports about its condition. At Shellpoint's behest, MCS began creating monthly inspection detail reports about whether the property was occupied or vacant from March to July 2014. (Costello Aff. ¶¶ 11-13, Exs. E, F, G). On May 6 2014, MCS reported that the property was vacant. (*Id.* ¶ 12, Ex. F, Inspection Rep. May 6, 2013). MCS is not a party to this matter.

Ettayem disputed the property's value. In preparation for the sheriff sale of the property, neutral appraisers retained by the sheriff estimated the property's value at

2

$381,000 on July 3, 2014. In August 2014, Ettayem filed a motion to stay the sheriff sale and the foreclosure judgment on the basis that Ettayem's own appraiser valued the property at $493,000, not $381,000. (Emergency Motion to Stay at 1, *Bank of New York Mellon v. Ashraf Ettayem*, Delaware Cty. Common Pleas No. 12-CVE-09-1058 (Aug. 8, 2014).) This Court granted the stay under the condition that the stay did not take effect until after Ettayem posted a supersedeas bond for $437,928.85. (HER & Funtjar Mot. for Summary J., Ex. D at 1) Ettayem, however, did not post bond.

The sheriff sale proceeded as scheduled on August 13, 2014. Bidding on the property opened at $254,000 – two-thirds of the $381,000 appraised value – and BONYM ultimately submitted the winning bid on the property for $370,000. (Costello Aff. ¶ 9, Ex. D.) Ettayem objected to the sale and filed a motion to set aside the sheriff sale. This Court conducted an oral hearing on September 23, 2014 wherein Ettayem relied on the same appraisal figure he submitted with his motion to stay the sale, though the appraiser did not testify. (*Id.*)

On October 14, 2014, this Court found that Ettayem had not presented competent evidence as to the property's value, confirmed the sheriff sale, and denied Ettayem's motion. (*Id.*) Ettayem appealed the judgment, but the Fifth District Court of Appeals affirmed this Court's decision, holding that Ettayem failed to demonstrate he was prejudiced by the $254,000 opening bid because the successful bid of $370,000 exceeded two-thirds of Ettayem's proposed appraisal value. *Bank of New York Mellon v. Ettayem*, 5th Dist. Delaware No. 15CAE010006, 2015-Ohio-4157, ¶ 19.

Shellpoint ordered MCS to clean and to rekey the property so that it could be listed for sale. On September 2, 2014, MCS informed Shellpoint that "3 knoblocks have been rekeyed, 35241. Lockbox has been installed, 3681. 2 padlocks have been installed

on the garage overhead door and back door that has been kicked in, A389. 8 [cubic yards] were removed. Vendor is bidding the initial grass cut and maid service as the house is oversized." (*Id.* ¶ 13, Ex. G.) MCS performed maid services, mold-remediation work, and grass-cutting services. (*Id.* ¶ 11, Ex. E.)

BONYM authorized Shellpoint to secure the property and to list it for sale. (Costello Aff. ¶ 1.) On August 18, 2014, the week after BONYM had purchased the property at the sheriff sale, Shellpoint engaged William Funtjar ("Funtjar"), a real estate agent employed by HER, to enter and to inspect the property. (HER & Funtjar Mot. for Summary J., Ex. A., ¶¶ 4-5 ("Funtjar Aff.").) Authorized by Shellpoint, Funtjar entered the property to inspect it, reported that the property appeared vacant, and opined as to the value of the home. (*Id.* ¶¶ 6, 16.) At Shellpoint's direction, Funtjar listed and marketed the property for sale starting on September 26, 2014 in the name of his real estate brokerage, HER. (*Id.* ¶ 19).

Ettayem alleges that he visited the property on October 12, 2014 where he noticed the house was listed for sale and that the locks had been changed. Ettayem summoned a locksmith who rekeyed the locks on the doors so that Ettayem could regain access to the premises. (Ettayem 4/11/2017 Dep. 50-52, filed 4/12/19.) Upon entry to the property, Ettayem purportedly discovered various personal items were missing. (*Id.* 53.) On October 13, the listing was removed and the property was no longer marketed for sale. (Funtjar Aff. ¶ 20.)

This Court confirmed the sheriff sale again in December 2014 and ordered the proceeds of the sale distributed. (HER & Funtjar Mot. for Summary J., Ex. G) The property was listed for sale again on January 27, 2015 and ultimately sold after the sheriff's deed to BONYM was recorded. (Funtjar Aff. ¶ 21.)

4

Ettayem originally filed a complaint at this Court on October 12, 2016 against HER and Funtjar, alleging that they had trespassed on the property and removed his personal property. On May 26, 2017, Ettayem added Shellpoint and BONYM as co-defendants in an amended complaint. Though Shellpoint and BONYM filed motions to dismiss and motions for summary judgment, Ettayem voluntarily dismissed his amended complaint before this Court could rule on the motions.

Ettayem re-filed his amended complaint on December 7, 2018. That complaint in this case raises the following eight counts against the BONYM, Shellpoint, HER, and Funtjar: (1) negligence, (2) negligent hiring, training, and supervision, (3) trespass, (4) mischief, (5) theft and fraud, (6) conversion, (7) intentional and negligent infliction of emotional distress, and (8) punitive damages. BONYM and Shellpoint filed a joint motion for summary judgment on April 9, 2019. HER and William Funtjar filed a joint motion for summary judgment on April 12, 2019. Ettayem filed two memoranda opposing each motion on May 31, 2019. BONYM and Shellpoint filed a reply on June 7, 2019. HER and Funtjar filed a reply on June 6, 2019.

**The Law Governing Motions for Summary Judgment**

The Court must make disposition of the Defendants' motions for summary judgment within the confines of Civil Rule 56(C), as well as the interpretation of that rule by the Supreme Court of Ohio. *See, e.g., State ex rel. Zimmerman v. Tompkins*, 75 Ohio St.3d 447, 663 N.E.2d 639 (1996). Under Civil Rule 56(C), the moving party bears the initial burden of informing the trial court of the basis for the motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential elements of the nonmoving party's claims. *Dresher v. Burt*, 75 Ohio St.3d 280, 293, 662 N.E.2d 264 (1996). The moving party cannot discharge its burden

5

with a conclusory assertion that the nonmoving party has no evidence to prove its case; the moving party must point to evidence of the type listed in Civil Rule 56(C), affirmatively demonstrating that the nonmoving party has no evidence to support the claims. *Vahila v. Hall*, 77 Ohio St.3d 421, 674 N.E.2d 1164 (1997). In doing so, the moving party must rely exclusively on "pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact" to establish that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law. Civ.R. 56(C).

If the moving party satisfies its burden, the burden then shifts to the nonmoving party to set forth specific facts demonstrating that there is a genuine issue of material fact for trial. *Vahila*, 77 Ohio St.3d at 429. Summary judgment should be granted where the nonmoving party does not respond with – or fails to set forth, by affidavit or as otherwise provided in Civil Rule 56 – specific facts showing that there is a genuine issue for trial. *Dresher*, 75 Ohio St.3d at 293; Civ.R. 56(E).

A motion for summary judgment may not be granted unless the court determines that: (1) no genuine issue as to any material fact remains for litigation; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing the evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made. *Tompkins*, 75 Ohio St.3d at 448.

**Statutes of Limitations Arguments**

Because the parties dispute the applicability of various statutes of limitations in counts three through seven, I will address all of the statute-of-limitations arguments at once. The statute of limitations for ordinary tort claims in Ohio is four years. R.C.

2305.09; *Velotta v. Leo Petronzio Landscaping, Inc.*, 69 Ohio St.2d 376, 378, 433 N.E.2d 147 (1982). Claims for the intentional or negligent infliction of emotional distress, however, are subject to the two-year statute of limitations in R.C. 2305.10. See *Lawyers Coop. Pub. Co. v. Muething*, 65 Ohio St.3d 273, 280-81, 603 N.E.2d 969 (1992).

In general, a cause of action accrues at the time a wrongful act is committed. *Harris v. Liston*, 86 Ohio St.3d 203, 1999-Ohio-159, 714 N.E.2d 377 (1999). In cases where "the wrongful act does not immediately result in injury or damage," however, "strict application of the general rule can lead to an unjust result." *Id.* Thus, Ohio recognizes the so-called discovery rule, which is "invoked in situations where the injury complained of may not manifest itself immediately and, therefore, fairness necessitates allowing the assertion of a claim when discovery of the injury occurs beyond the statute of limitations." *NCR Corp. v. U.S. Mineral Products Co.*, 72 Ohio St.3d 269, 271, 1995-Ohio-191, 649 N.E.2d 175 (1995).

R.C. 2307.60 allows complainants to bring a civil claim for harm caused to them by others' criminal activity, and any such claim is subject to a one-year statute of limitations under R.C. 2305.11(A), which sets a one-year limitation period for any "action upon a statute for a penalty or forfeiture." In *Steinbrick v. Cleveland Elec. Illumination Co.*, the Eighth District Court of Appeals held that a civil claim for criminal conduct under R.C. 2307.60 involves a potential penalty because the statute permits recovery of litigation costs and may include "punitive or exemplary damages." 8th Dist. Cuyahoga No. 66035, 1994 WL 463817, *2 (Aug. 25, 1994). "[B]ecause R.C. 2307.60 *contemplates* a penalty[,] . . . R.C. 2305.11(A) is the applicable statute of limitations." *Id.*

7

(emphasis added). A claim under R.C. 2307.60 is, therefore, subject to the one-year statute of limitations set by R.C. 2305.11(A). *Id.*

Here, Ettayem first discovered – on October 12, 2014 – that his personal property was missing and that the real property was listed for sale. Ettayem brings two civil claims based on criminal activity – mischief (R.C. 2909.07) and theft (R.C. 2913.02) – that he alleges was committed against him. Those claims are barred by a one-year statute of limitations. Even if Ettayem had filed those two claims against all the parties in his first complaint in 2016, the mischief and theft claims would have been time-barred then because he discovered the alleged theft and mischief in 2014.

Ettayem's trespass, conversion, and fraud claims are not time-barred, however, because those claims are subject to the four-year statute of limitations in R.C. 2305.09. His emotional-distress claims, though, are subject to the two-year limitations period set by R.C. 2305.10. Those claims against Shellpoint and BONYM – which focus on events in 2014 and which were first included in the amended complaint in this case in May 2017 – are untimely. Ettayem's emotional-distress claims against HER and Funtjar, however, comply with the statute of limitations. Yet, even if not barred by the statute of limitations, all of Ettayem's claims fail as a matter of law for the reasons set forth below.

**Ettayem's negligence-related claims fail because no evidence supports either claim.**

Count one of the complaint is a general negligence claim, and count two is a claim for negligent retention, supervision, hiring, and/or promotion. Counts one and two must be dismissed.

To prevail on a general negligence claim, a plaintiff must demonstrate that (1) the defendant owed a duty of care to the plaintiff; (2) the defendant breached that duty; and

8

(3) the plaintiff suffered injury proximately caused by the defendant's breach of duty. *See Simmons v. Quarry Golf Club, LLC*, 2016-Ohio-525, 60 N.E.3d 454, ¶ 19 (5th Dist.). Unless special circumstances apply, a creditor-debtor relationship does not create a fiduciary or other relationship between the parties. *Watson v. Chase Home Fin., LLC*, 5th Dist. No. 13CA100, 2014-Ohio-4018, ¶ 23 citing *Groob v. Keybank*, 108 Ohio St.3d 348, 351, 2006-Ohio-1189, 843 N.E.2d 1170.

Here, Ettayem's negligence claims against BONYM, Shellpoint, HER, and Funtjar fail as a matter of law because Ettayem does not point to any recognized duty of care owed to him by those Defendants. The complaint alleges that BONYM and Shellpoint owed Ettayem duties imposed by "Federal and State laws and rules and regulations of Mortgage banker Association." (Compl. ¶ 36.) The complaint asserts, too, that HER and Funtjar owed Ettayem "duties under R.C. 4735." (Compl. ¶ 35.) Ettayem does not, however, identify any specific duty owed by the defendants to him. This Court is not required to accept non-specific factual allegations, inferences, or unwarranted legal conclusions. *Sharwell v. Kaiser Permanente*, 73 Fed.Appx. 834, 835 (6th Cir. 2003) (citations omitted).

In his memoranda opposing summary judgment (though not in any of the pleadings), Ettayem argues that BONYM and Shellpoint disregarded R.C. Chapter 2329 and had a duty to manage and supervise their alleged agents -- like MCS -- who are not parties to this suit. (Mem. Opp. BONYM 4.) Ettayem does not specify the applicability of any provisions of R.C. Chapter 2329 to these proceedings, and this Court will not engage in legal research and advocacy on his behalf. Ettayem also argues, as support for his negligence claim, that HER and Funtjar violated R.C. 4735.18. That provision, however, does not apply to this case but instead governs disciplinary sanctions against real-estate

9

brokers. Because Ettayem has failed to identify any legal duty that the Defendants may have owed to him, count one fails as a matter of law.

Count two – negligent hiring, training, and supervision – fails as a matter of law too because no genuine dispute of material fact exists. To prevail on a claim for negligent hiring, supervision, and retention of an employee by an employer, Ettayem must prove the following elements:

> (1) the existence of an employment relationship;
> (2) the employee's incompetence;
> (3) the employer's actual or constructive knowledge of such incompetence;
> (4) the employee's act or omission causing the plaintiff's injuries; and
> (5) the employer's negligence in hiring or retaining the employee as the proximate cause of plaintiff's injuries.

*Steppe v. Kmart Stores*, 136 Ohio App.3d 454, 465, 737 N.E.2d 58 (8th Dist.1999).

An employer-employee relationship imposes a duty on the employer to prevent foreseeable injury to others by exercising reasonable care to refrain from employing an incompetent employee. *Chapa v. Genpak, LLC*, 10th Dist. Franklin No. 12AP–466, 2014-Ohio-897, ¶ 111. An injury is foreseeable if a party knew or should have known that his act was likely to result in harm to someone. *Mudrich v. Standard Oil Co.*, 153 Ohio St. 31, 39, 90 N.E.2d 859 (1950). The foreseeability of an act depends upon the knowledge of the defendant, which must be determined by the totality of the circumstances. *March v. Steed Enterprises, Inc.* 5th Dist. Muskingum No. CT2012–0058, 2013-Ohio-4448, ¶ 30. A defendant will be held liable only if the totality of the circumstances is "somewhat overwhelming." *Id.* An employee's incompetence "relates not only or exclusively to an employee's lack of ability to perform the tasks that his or her job involves" but also to "behavior while on the job inapposite to the tasks that a job

10

involves." *Fry v. Wheatland Tube, LLC*, 5th Dist. Guernsey No. 18CA7, 2019-Ohio-1453, ¶ 91 (quotations omitted).

Here, the complaint identifies HER as the sole Defendant on the claim for negligent hiring, training, and supervision. (Compl. ¶¶ 41-45.) In his memoranda opposing BONYM and Shellpoint's motion for summary judgment, Ettayem argues that BONYM and Shellpoint failed to supervise and manage their agents. (Pltf. Mem. Opp. HER Summary J. at 4). Ettayem's failure to include the claim against BONYM and Shellpoint in the complaint bars a later attempt to do so in briefing at the summary-judgment stage. This Court will analyze only the claim for negligent hiring, training, and supervision against HER for the conduct of its agent, Funtjar.

No genuine dispute of material fact exists on elements two through five of Ettayem's claim for negligent hiring, training, and supervision against HER. At the summary-judgment stage, "the question is whether there is sufficient evidence to create a genuine issue for a jury to decide." *Santho v. Boy Scouts of Am.*, 168 Ohio App.3d 27, 2006-Ohio-3656, 857 N.E.2d 1255, ¶ 16 (10th Dist.) Funtjar inspected and marketed the property at the express authorization of Shellpoint. (Funtjar Aff. ¶¶ 5-8, 16.) Edward Caldwell — Funtjar's manager at HER — affirms that the company does not believe Funtjar is or was an incompetent real estate salesperson. (HER & Funtjar Mot. for Summary J., Ex. B, Caldwell Aff. ¶ 9.) Beyond conclusory allegations that Caldwell's affidavit is "totally deficient and shall not have any weight," Ettayem has not set forth any evidence or testimony that identifies Funtjar's incompetence or rebuts HER's testimony that it lacked actual or constructive knowledge of Funtjar's incompetence. (Pltf. Mem. Opp. HER Summary J. at 7.) Ettayem also has not established a causal link between Funtjar's incompetence and the harm allegedly suffered. As discussed in the

11

section below, Funtjar's actions – entering the property and briefly listing it for sale – were lawful because BONYM possessed both a contractual privilege to access the property and title to the property too. In the absence of any evidence that creates a genuine dispute of material fact, count two is accordingly dismissed.

**Ettayem's trespass and mischief claims fail because the entrance onto the property by Defendants was lawful under the mortgage.**

All Defendants in this matter are entitled to summary judgment with regard to Ettayem's trespass claim. Trespass, a common-law tort, is the "unlawful entry upon the property of another." *Chance v. BP Chemicals, Inc.*, 77 Ohio St.3d 17, 24, 670 N.E.2d 985 (1996). A trespass occurs "when a person, *without authority or privilege*, physically invades or unlawfully enters the private premises of another whereby damages directly ensue." *Apel v. Katz*, 83 Ohio St.3d 11, 19, 697 N.E.2d 600 (1998) (quotations omitted) (emphasis added). The elements of trespass are (1) an unauthorized intentional act, and (2) entry upon land in the possession of another. *Brown v. Scioto Cty. Bd. of Commissioners*, 87 Ohio App.3d 704, 716, 622 N.E.2d 1153 (4th Dist.1993) (citations omitted).

In *Tauwab v. Huntington Bank*, the Eighth District Court of Appeals affirmed the trial court's award of summary judgment in favor of a lender and its agents that allegedly had trespassed when the agents removed the debtor's personal property. 8th Dist. Cuyahoga No. 96996, 2012-Ohio-923, ¶ 7. Because the borrower had defaulted prior to the agent's entrance into the property, the property-protection provision in the mortgage agreement empowered the lender to do "whatever is reasonable or appropriate to protect the Lender's interest in the Property and rights under this Security Instrument, including . . . securing and/or repairing the property." *Id.* ¶ 7.

12

Here, the Defendants are entitled to judgment as a matter of law because entry into the property was authorized by the terms of the mortgage. Section 9 of the BONYM-Ettayem mortgage allocated the following rights to BONYM in the event that Ettayem defaulted:

> If (a) [Ettayem] fails to perform the covenants and agreements contained in this Security Instrument, . . . or (c) [Ettayem] has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value, and securing and/or repairing the Property.

(Costello Aff. Ex. B. ¶ 7.)

By falling behind and eventually defaulting on the mortgage, Ettayem violated his contractual obligation to pay. Ettayem, therefore, breached his covenant with BONYM to pay the mortgage. (Costello Aff. ¶ 8, Ex. C.) Ettayem's breach activated BONYM's contractual right under Section 9 to protect its interest in the property by taking reasonable means. BONYM was, accordingly, authorized to secure and to repair the property through reasonable and appropriate action.

This Court finds that it was reasonable and appropriate for BONYM, under the circumstances, to enter and to secure the premises. Before the Defendants entered the property, MCS had already reported on several occasions that the property was vacant. (*Id.* ¶ 11, Ex. E.) Ettayem conceded in his deposition that the Property was vacant for years, including the spring preceding the instances where Defendants entered the property. (Ettayem 8/25/17 Dep. 32, filed 4/12/19.) These circumstances – coupled with Ettayem's default – establish that entering onto the property was authorized by Section 9. Because the Defendants were authorized by a contractual privilege to enter the

property, Ettayem cannot prevail on his trespass claim against BONYM or any party who acted at its direction.

Indeed, BONYM's authorization to enter the property extends to Shellpoint, Funtjar, and HER, and, therefore, these parties were authorized to enter the property too. Section 9 of Ettayem's mortgage agreement with BONYM is nearly identical to the property-protection provision in *Tawab*. Ettayem's default and the property's vacant appearance authorized BONYM to order its agents and contractors to enter the property so that it could be secured, assessed, and prepared for sale.

**Ettayem cannot assert a trespass claim for land he does not own.**

In any event, Ettayem did not hold title to the property on the day in question and cannot raise a claim of trespass for that reason as well. "The general rule in Ohio law is that the confirmation of a judicial sale relates back to the day of sale and passes title as of that day." *Lally v. Cleveland Ballet*, 8th Dist. Cuyahoga No. 52727, 1987 WL 17222 (Sept. 17, 1987) (citing *Jashenosky v. Volrath*, 59 Ohio St. 540 (1899)). This Court confirmed the sheriff sale on October 14, 2014. Because the October 2014 judgment entry relates back to August 13, 2014 – the day of the sheriff sale – title to the property, therefore, passed from Ettayem to BONYM on that day. Ettayem cannot prevail on a claim for trespass against any defendant because, at the time of the alleged malfeasance, he no longer held any legal right to the property.

**Ettayem's mischief claim fails as a matter of law because it simply restates his trespass and conversion claims.**

Ettayem's count four – a civil claim for criminal mischief – is a restatement of his trespass and conversion claims and, therefore, must be dismissed for the same reasons. Under R.C. 2307.60, a party may pursue a civil action to recover for damages incurred

14

due to a criminal offense. The offense of criminal mischief can likewise be brought as a civil claim and occurs whenever one "without the privilege to do so, knowingly . . . damage[s], destroy[s], or otherwise tamper[s] with . . . [t]he property of another." R.C. 2909.07(A)(1). See also *State v. Smith*, 4th Dist. Highland No. 02CA6, 2002-Ohio-4532, ¶ 11.

Here, Section 9 of the mortgage agreement, however, explicitly authorized the Defendants to take reasonable action to secure the premises if they appeared vacant or if Ettayem defaulted on the mortgage. As previously stated, Ettayem's default authorized BONYM to exercise its right to enter and to secure the property. The Defendants here exercised a privilege that defeats, as a matter of law, the cause of action of mischief.

**Ettayem's theft claim fails as a matter of law because BONYM was entitled to clear the property under the mortgage.**

Ettayem does not cite a statute for his theft claim, but the Court will construe it as a claim under R.C. 2913.02. That statute defines theft as follows:

> (A) No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways:
>> (1) Without the consent of the owner or person authorized to give consent;
>> (2) Beyond the scope of the express or implied consent of the owner or person authorized to give consent;
>> (3) By deception;
>> (4) By threat;
>> (5) By intimidation.

Under R.C. 2307.60(A)(1), an injured plaintiff may bring a civil action related to criminal acts as follows:

> Anyone injured in person or property by a criminal act has, and may recover full damages in, a civil action unless specifically excepted by law, may recover the costs of maintaining the civil action and attorney's fees if authorized by any provision of the Rules of Civil Procedure or another

15

section of the Revised Code or under the common law of this state, and may recover punitive or exemplary damages if authorized by section 2315.21 or another section of the Revised Code.

Contrary to assertions in both motions for summary judgment, an underlying criminal theft conviction is not required to pursue a civil theft claim. When the civil recovery is sought from a person who committed a theft, R.C. 2307.61(G)(1) directs the trial court to determine if "a theft offense involving the owner's property has been committed, *whether or not any person has pleaded guilty to or has been convicted of any criminal offense*." (emphasis added). See *Cuyahoga Hts. Local School Dist. v. Palazzo*, 2016-Ohio-5137, 69 N.E.3d 162, ¶¶ 14-16 (8th Dist.) (civil theft claim does not require an underlying criminal theft conviction); *CitiMortgage, Inc. v. Rudzik*, 7th Dist. Mahoning No. 13MA20, 2014-Ohio-1472, 2014 WL 1384596, ¶ 27 ("relying on the clear language of R.C. 2307.61(G)(1) . . . a criminal conviction is not required"); *H&W Door Co. v. Stemple*, 11th Dist. Portage No. 93P31, 1994 WL 116257, *2 (civil theft is a remedy "available even though the defendant has not pled guilty to, or been convicted of, any criminal offense in relation to any act involving the owner's property").

Here, Ettayem's theft claim fails because it replows the same ground covered by his conversion and trespass claims in counts six and three. As explained above, at the time of the alleged theft, Ettayem did not possess title to the real property from which his personal property was purportedly removed. Any dominion or control exerted by the Defendants over Ettayem's property was lawful because MCS entered and cleared the property under the authority of Section 9 of the mortgage. Ettayem's theft claim accordingly fails as a matter of law.

16

**Ettayem's fraud claim falters because he did not plead with particularity or establish a misrepresentation of a material fact, justifiable reliance, or actual damages.**

Ettayem's fraud claim fails too. Fraud claims are held to a heightened standard of pleading to prevent abuse and to mitigate the reputational damage that accompanies baseless fraud claims. *RAE Accocs., Inc. v. Nexus Commc'ns, Inc.*, 2015-Ohio-2166, 36 N.E.3d 757, ¶ 15 (10th Dist.) (citations omitted). "A plaintiff alleging fraud must plead with particularity the circumstances constituting fraud." Civ. R. 9(B). The circumstances constituting fraud "include the time, place, and content of the false representation; the fact misrepresented; the identification of the individual giving the false representation; and the nature of what was obtained or given as a consequence of the fraud." *Advanced Prod. Ctr., Inc. v. Emco Maier Corp.*, 5th Dist. Delaware No. 2003CAE03020, 2003-Ohio-6206, ¶ 15.

The elements of fraud are as follows:

> (1) a representation or, where there is a duty to disclose, concealment of a fact,
> (2) which is material to the transaction at hand,
> (3) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred,
> (4) with the intent of misleading another into relying upon it,
> (5) justifiable reliance upon the representation or concealment, and
> (6) a resulting injury proximately caused by the reliance.

*Johnson v. Church of the Open Door*, 179 Ohio App.3d 532, 2008-Ohio 6054, 902 N.E.2d 1002, ¶ 15 (9th Dist.) (quotations omitted).

Here, however, Ettayem has failed to plead his fraud claim with particularity. Indeed, the "Facts Common to All Claims" section of the complaint contains the following conclusory assertions:

17

> Defendants knowingly listed Plaintiff's home without his knowledge, consent and authorization. Defendant's [sic] knowingly misrepresented the fact that Plaintiff authorized and/or signed an exclusive right to sell as Defendants claimed in its listing and advertisement. Defendants knowingly misrepresented that Plaintiff was selling its house for $424,900.00 when in fact it was appraised for near $495,000.00. Defendant falsely advertised Plaintiff's house for sale and broadcasted their advertisements with photos taken inside and outside.

(Compl. ¶¶ 22-25.) The fraud claim section of Ettayem's complaint in count five, however, alleges that the fraud arose due to wrongful "control over [Ettayem's] *personal property*" (Compl. ¶¶ 56 (emphasis added).) The complaint fails to plead fraud with particularity because Ettayem does not specify the identity of a misrepresenting speaker, the time and place of misrepresentations, and what the parties gained from the alleged fraud. Ettayem also does not identify any justifiable reliance on any misrepresentations. Indeed, Ettayem's allegation as to the property's value is incongruent with fraud because, if Ettayem knew the property was listed for less than its actual value, he could not have justifiably relied on a misrepresentation he already knew to be false. Ettayem's failure to plead fraud with particularity alone entitles the movants to summary judgment. *Siemientkowski v. State Farm Ins. Co.*, 8th Dist. Cuyahoga No. 85323, 2005-Ohio-4295, ¶¶ 34-35.

Ettayem's fraud claim against HER and Funtjar appears to be premised on Ettayem's allegation that they misrepresented the fact that he desired to sell the property. Yet, HER and Funtjar never represented that Ettayem wanted or authorized the sale, only that a sale was imminent. (Funtjar Aff. ¶¶ 16-17.) Ettayem's fraud claim against those parties fails as a matter of law.

18

Ettayem's voicing of his opinion as to the property's value does not advance his claim that the Defendants misrepresented a material fact. "As a general rule opinions may not be the basis for a misrepresentation of fact." *Pappas Realty Co. v. Wharton*, 9th Dist. Summit Nos. 11222, 11223, 11233, 1984 WL 5175 (July 11, 1984). Here, Ettayem relies solely on his personal lay opinion – that the property is worth $495,000 – to prove that the Defendants misrepresented the property's true value. (Ettayem 8/25/17 Dep. 110, filed 4/12/2019.) The property was professionally appraised, however, at $381,000. (Land Appraisal, Delaware County Court of Common Pleas, 12-CVE-09-1058, at 1 (July 7, 2014).) Even if the property was placed on the market at a lower price than the appraisal, Ettayem's opinion about the value of a property he no longer owns does not prove that anyone misrepresented a material fact.

Ettayem's fraud claim also fails because he cannot prevail on the actual-damages requirement. To prove fraud, the plaintiff must have suffered actual damages. *Epicor Software Corp. v. Sample Machining Co.*, 2nd Dist. Montgomery No. 20390, 2005-Ohio-2234, ¶ 54. In Ohio, "the party claiming fraud must show that the fraud has come to rest, causing him injury. . . . Such injury must be real, and not merely fanciful." *Pappas Realty*, 1984 WL 5175, *5 (quotations omitted) (rejecting nominal damages as support for fraud claim).

Here, Ettayem has not identified a genuine dispute of material fact on his allegation that he suffered actual damages as a result of any purported fraud. The house was listed for sale from September 26, 2014 to October 12, 2014 – seventeen days – and the listing was removed within one day of Ettayem's request. (Funtjar Aff. ¶¶ 19-20; Ettayem 8/25/17 Dep. 48, filed 4/12/19.). Ettayem concedes that he was not actively trying to sell the property at the time the house was listed by HER and Funtjar.

19

(Ettayem 8/25/17 Dep. 110-111, filed 4/12/19.) Ettayem cannot establish that he was damaged by any of the Defendants' actions.

**Res judicata bars further litigation disputing the property's value and the sheriff sale.**

Ettayem's fraud claim is also barred by res judicata. The Supreme Court of Ohio has held that "a valid, final judgment rendered upon the merits bars all subsequent actions based upon any claim arising out of the transaction or occurrence that was the subject matter of the previous action." *Grava v. Parkman Twp.*, 73 Ohio St.3d 379, 1995-Ohio-331, 653 N.E.2d 226, syllabus. Res judicata has four elements: (1) a final, valid decision on the merits by a court of competent jurisdiction, (2) a second action involving the same parties, or their privies, as the first; (3) a second action raising claims that were or could have been litigated in the first action; and (4) a second action arising out of the transaction or occurrence that was the subject matter of the previous action. *Portage Cty. Bd. of Commrs. v. Akron*, 109 Ohio St.3d 106, 846 N.E.2d 478, 2006-Ohio-954, ¶ 84 (quoting *Hapgood v. Warren*, 127 F.3d 490, 493 (6th Cir. 1997).

In his fraud claim, Ettayem attempts to re-litigate the October 14, 2014 judgment in his earlier case here denying his motion to set aside the sheriff sale and confirming the sale of the property. In the present matter, Ettayem's fraud claim involves the same parties, privies, and issues as his earlier case did. Because the fraud claim attempts to litigate the property's value again, Ettayem's fraud claim is barred as a matter of law on res judicata grounds.

20

**Ettayem's conversion claim fails because any control the Defendants exercised over his possessions – if any at all – was not wrongful as a matter of law.**

Conversion is "the wrongful control or exercise of dominion over the property belonging to another inconsistent with or in denial of the rights of the owner." *Beavers v. PNC Bank, Nat'l Ass'n.*, 8th Dist. Cuyahoga No. 99773, 2013-Ohio-5318, ¶ 29 (quotations omitted). To prevail on a claim for conversion, a plaintiff must also establish that (1) he or she demanded the property back after the possessor exerted control over the property and that (2) the possessor subsequently refused to deliver the property to the owner. *Id.* (citations omitted). In *Beavers v. PNC Bank*, a mortgagor alleged a conversion claim against a third-party contractor that had removed the personal property of a debtor while acting on behalf of PNC to secure the premises under the terms of the mortgage. *Id.* On appeal, the Eighth District affirmed the trial court's order granting summary judgment to the contractor and PNC on the conversion claim because any dominion or control exerted over the debtor's personal property while securing the premises was, as a matter of law, not wrongful. *Id.* ¶ 30.

Here, Ettayem's conversion claim is nearly identical to that in *Beavers*, and it fails for the same reasons. As with the trespass claim, MCS was authorized by BONYM and Shellpoint to enter the property and to secure the premises. Any control that BONYM, Shellpoint, Funtjar, HER, or any of their agents exerted over Ettayem's personal property was not wrongful, and therefore, no conversion claim can remain. The Defendants are entitled to a judgment in their favor on count six.

21

**Ettayem's distress-related claims fail because they arise from the disposition of property in a foreclosure.**

Ettayem's claims in count seven against all Defendants for intentional and negligent infliction of emotional distress fail as a matter of law. To prevail on an intentional-infliction-of-emotional-distress claim, a plaintiff must demonstrate four elements: (1) that the defendant either intended to cause emotional distress or knew or should have known that actions taken would result in serious emotional distress to the plaintiff, (2) that the defendant's conduct was so extreme and outrageous as to go beyond all possible bounds of decency, (3) that the defendant's actions were the proximate cause of the plaintiff's psychic injury, and (4) that the mental anguish suffered by the plaintiff is serious and of a nature that "no reasonable man could be expected to endure it." *Retuerto v. Berea Moving Storage & Logistics*, 2015-Ohio-2404, 38 N.E.3d 392, ¶ 64 (8th Dist.).

Under the elements of an intentional-infliction-of-emotional-distress claim, courts must initially determine as a matter of law whether the alleged conduct is "extreme and outrageous." *Morrow v. Reminger & Reminger Co. L.P.A.*, 183 Ohio App.3d 40, 2009-Ohio-2665, ¶ 48 (10th Dist.) (citations omitted). If the alleged conduct is not extreme and outrageous, then the court may dismiss the claim. *Id.* The standard for extreme and outrageous conduct was set forth in *Yeager v. Local Union 20* as follows:

> It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of

22

decency, and to be regarded as atrocious, and utterly
intolerable in a civilized community. Generally, the case is
one in which the recitation of the facts to an average member
of the community would arouse his resentment against the
actor, and lead him to exclaim, 'Outrageous!' The liability
clearly does not extend to mere insults, indignities, threats,
annoyances, petty oppressions, or other trivialities.

6 Ohio St.3d 369, 374-375, 453 N.E.2d 666 (1983) (quoting Restatement of the Law 2d,

Torts, Section 46, comment d (1965)).

Recovery for the negligent infliction of emotional distress is limited to instances

where one was either a bystander to an accident or was in fear of physical consequences

to his own person. *High v. Howard*, 64 Ohio St.3d 82, 85, 592 N.E.2d 818 (1992). Like

an intentional-infliction-of-emotional-distress claim, a negligent-infliction-of-

emotional-distress claim requires the plaintiff to establish that he or she experienced

"serious" emotional distress, defined as follows:

[S]erious emotional distress describes emotional injury
which is both severe and debilitating. Thus, serious
emotional distress may be found where a reasonable person,
normally constituted, would be unable to cope adequately
with the mental distress engendered by the circumstances of
the case.

*Paugh v. Hanks*, 6 Ohio St.3d 72, 78, 451 N.E.2d 759 (1983). The physical threat must

be actual because a claimant's "fear of nonexistent peril" is not sufficient to recover for

the negligent infliction of emotional distress. *Audia v. Rossi Bros. Funeral Home, Inc.*,

140 Ohio App.3d 589, 593, 748 N.E.2d 587 (7th Dist.2000) (quoting *Heiner v.*

*Moretuzzo*, 73 Ohio St.3d 80, 87, 652 N.E.2d 664 (1995)).

In *Ettayem v. Ramsey*, the Tenth District Court of Appeals affirmed a trial

court's dismissal of Ashraf Ettayem's emotional-distress claims against another

mortgage lender. 10th Dist. Franklin No. 17AP-155, 2019-Ohio-675, ¶¶ 1, 25, 28. The

trial court dismissed both claims because they both arose from the "disposition of [] real property" in a foreclosure action. *Id.* ¶ 25. The Tenth District affirmed dismissal of the intentional-infliction-of-emotional-distress claim because foreclosing on a property when a borrower defaults is not conduct that exceeds all possible bounds of decency. *Id.* The Tenth District also affirmed dismissal of Ettayem's negligent-infliction-of-emotional-distress claim because the alleged emotional distress was neither the result of witnessing an accident as a by-stander nor a result of fear of any actual physical danger to himself. *Id.* ¶ 28.

Here, Ettayem's emotional-distress claims fail for the same reasons as those in *Ettayem v. Ramsey*. Ettayem sets forth evidence – a self-serving affidavit and his own deposition – that does not create a dispute of material fact with regard to either emotional-distress claim. Ettayem admits that he was not a witness to a dangerous accident or subject to actual physical peril, conceding that no one was in the house when he eventually gained access. (Ettayem 8/25/17 Dep. 116-118, filed 4/12/19.) The alleged injury – the anguish and fear he supposedly experienced during the foreclosure process – is not serious, extreme, or outrageous as a matter of law. Because count seven of the complaint is rife with conclusory legal assertions, sparse factual allegations, and no genuine dispute of material fact, Ettayem cannot, as a matter of law, prevail on his emotional-distress claims.

### Ettayem's general claim for punitive damages fails as a matter of law.

Punitive damages cannot be awarded unless connected to a cause of action. "It is axiomatic that punitive damages cannot be awarded absent an award of actual or nominal damages on a plaintiff's underlying claim." *Avery v. City of Rossford*, 145 Ohio

24

App.3d 155, 166, 762 N.E.2d 388 (6th Dist.2001) (citation omitted). Because no causes of action remain, Ettayem's blanket request for punitive damages falters as well.

**Conclusion**

For the foregoing reasons, both motions for summary judgment are GRANTED.

Ettayem is responsible for the court costs.

**THIS IS A FINAL APPEALABLE ORDER.
THERE IS NO JUST CAUSE FOR DELAY.**

DAVID M. GORMLEY, JUDGE

The Clerk of this Court is hereby Ordered to serve a copy of this Judgment Entry upon the following by ☑ Regular Mail, ☐ Mailbox at the Delaware County Courthouse, ☐ Facsimile transmission

Ashraf A. Ettayem, *Plaintiff*, 1195 Breakers Court, Westerville, OH 43082

Mark R. Meterko, *Counsel for Defendants HER, LLC and William Funtjar*, 1650 Lake Shore Drive, Ste. 150, Columbus, Ohio 43204

Jeffrey J. Hanneken, *Counsel for Defendants Shellpoint and BONYM*, Graydon Head & Ritchey LLP, 312 Walnut Street, Ste. 1800, Cincinnati, Ohio 45202



This document sent to each attorney/party by:
☑ ordinary mail
☐ fax
☐ attorney mailbox
☐ certified mail
☐ email
Date: 11/20/19 By: