**GRAND RAPIDS PLASTICS, INC.,
Plaintiff–Appellant,**

v.

**Craig M. LAKIAN, et al., Defendants–
Appellees.**

**No. 98–1698.**

United States Court of Appeals,
Sixth Circuit.

Argued June 15, 1999.

Decided Aug. 12, 1999.

John E. Anding (argued and briefed), Christopher G. Hastings (briefed), Drew, Cooper & Anding, Grand Rapids, MI, for Grand Rapids Plastics, Inc.

William H. Baughman, Jr. (briefed), Weston, Hurd, Fallon, Paisley & Howley, Cleveland, OH; Thomas P. Casey (briefed), Harper Woods, MI, for Craig M. Lakian.

William J. Lamping (argued and briefed), Vestevich, Mallender, DuBois & Dritsas, Bloomfield Hills, MI, for James Chapman and H & L Engineering, Inc.

J. Walker Henry (briefed), Timothy D. Wittlinger, Clark Hill, P.L.C., Detroit, MI, for Pine River Plastics, Inc.

Before: MARTIN, Chief Judge, and JONES and SUHRHEINRICH, Circuit Judges.

BOYCE F. MARTIN, Jr., Chief Judge.

Grand Rapids Plastics, Inc. appeals the district court's findings that its Robinson-Patman Act claims were barred by the statute of limitations and that Grand Rapids had no tortious interference claim because it had no business relationship or expectancy with Daikyo–Decoma. We conclude that the district court correctly dismissed both claims.

### I.

In 1988, Daikyo–Decoma, a supplier of automobile parts to automaker Mazda, needed to find a molder of custom-designed interior parts. Reiso Hiromitsu was the head of Daikyo–Decoma at this time and until 1990. Craig Lakian, an account representative for Decorative Systems Marketing, Inc. was assigned to provide part-time service to Daikyo–Decoma at this time. Daikyo–Decoma asked him to offer "opinions and recommendations" in locating an injection molding company. Lakian approached James Chapman, owner of H & L Engineering, an engineering consulting firm, whom Lakian knew to be knowledgeable about qualified molding companies.

Chapman recommended Pine River Plastics, a supplier of plastic injection molded parts for the auto industry, with whom he had an existing business relationship. Chapman contacted Tom Acton, the owner of Pine River Plastics, who expressed interest in taking over the work. Lakian assisted Acton in preparing for the meeting with Daikyo–Decoma, and both Lakian and Chapman were present at the resulting meeting between Acton and Daikyo–Decoma. Pine River bid on and was awarded the job in 1989, which we will refer to as "the 1989 work." The work began, and Pine River received payment in early 1990. In his affidavit, Hirmitsu stated that Lakian never participated in any of Daikyo–Decoma's hiring or contractual decisions.

Also in 1990, Daikyo–Decoma asked Pine River to bid on interior plastic trim parts for the 1992 model year Mazda vehicles, which we will call "the 1992 work." Pine River bid on and was awarded the interior plastic trim parts work, but realized it did not have the capacity to complete all the work and declined to produce the console parts. Pine River began production in 1992, and is still producing the interior plastic trim. Lakian introduced Grand Rapids Plastics to Daikyo–Decoma in July 1990. Grand Rapids bid on the console work that Pine River had declined and was awarded the job in October 1990. Prior to July 1990, Grand Rapids Plastics had no existing relationship with Daikyo–Decoma.

In July 1990, Pine River began paying Chapman a six percent commission for any of Pine River's parts that he sold. Chapman and Lakian had agreed that if Pine River got the 1989 work, Chapman would pay thirty-five percent of his commission to Lakian. Pine River terminated its agreement with Chapman in 1994, but continued to pay him until 1995. Although it is unclear from the record exactly how the commissions were distributed, Chapman ultimately paid Lakian approximately $300,000. It seems that Pine River was unaware that any money was wrongfully paid to Lakian.

Lakian resigned from Decorative Systems Marketing effective August 31, 1990, but Grand Rapids contends that he continued to influence Daikyo–Decoma. In February 1992, Fred Blackstone, Executive Vice President of Grand Rapids, met with Lakian to discuss the possibility of a job. Blackstone stated in his deposition that at the meeting, Lakian demanded payment of commissions on the work he had brought Grand Rapids. Blackstone testified that Lakian told him that he needed a commission to pass on to Daikyo–Decoma's engineering manager, Steve Shinoda. Blackstone refused to pay unless Lakian signed a written agreement to be a Grand Rapids manufacturer's representative. According

to Blackstone, Lakian threatened that if Grand Rapids did not pay the commissions, they would not get any more work from Daikyo–Decoma. Despite the threat, Grand Rapids did almost four million dollars worth of business with Daikyo–Decoma in 1992 under a new contract for production of a rear finisher for which Pine River was not asked to bid. In addition, Lakian asked Pine River's engineer for a price reduction on behalf of Daikyo–Decoma sometime in 1992. Richard Ross, the engineer, testified that Lakian "held himself out as a Daikyo–Decoma person."

In 1992, Pine River and Grand Rapids bid head-to-head on work in connection with Mazda's 1994 European Model Year for Daikyo–Decoma, "the 1994 work," and Daikyo–Decoma awarded the contract to Pine River. In 1994, Daikyo–Decoma asked Grand Rapids to bid on a 1998 model year program, called "the 1998 work." Daikyo–Decoma did not ultimately consider the bid and awarded the contract to Pine River. Ultimately, Pine River was Daikyo–Decoma's sole supplier for the transfer work, dashboard parts, and meter hoods. Grand Rapids was the sole source for rear finishers and the 1992 consoles.

Lakian sued Grand Rapids in 1995 for the commissions he claimed were due him, but the case was dismissed. Grand Rapids Plastics filed its complaint against Chapman, H & L, Pine River, and Lakian on June 26, 1996, claiming a violation of the Robinson–Patman Act and tortious interference with business relations under Michigan state law. Chapman, H & L, and Pine River asserted that the statute of limitations had expired on Grand Rapids's claims, and alternately argued that the claims were legally incorrect and factually untrue. Chapman, H & L, and Pine River filed motions for summary judgment in June 1997. The district court granted summary judgment and dismissed Grand Rapids's claims against all defendants, finding that the claims were time barred. The district court dismissed the claims against Lakian, although he had neither raised the statute of limitations defense nor filed a motion for summary judgment. The district court denied Grand Rapids's motion for reconsideration on May 13, 1998.

## II.

■ Grand Rapids first challenges the district court's finding that its Robinson–Patman Act claims were barred by the statute of limitations. We review a district court's grant of summary judgment *de novo*. *Monette v. Electronic Data Sys. Corp.*, 90 F.3d 1173, 1176 (6th Cir.1996). A grant of summary judgment is appropriate if no genuine issue of material fact exists and one party is entitled to judgment as a matter of law. *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1310 (6th Cir.1989). A "genuine issue of material fact" is one which, if proven at trial, would result in a reasonable jury finding for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). We view the evidence in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

■ A plaintiff has four years after a cause of action accrues to enforce a violation of 15 U.S.C. § 13(c) of the Robinson–Patman Act. *See* 15 U.S.C. § 15b. Generally, a cause of action accrues and the statute begins to run when a defendant commits an act that injures a plaintiff's business. *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 338, 91 S.Ct. 795, 28 L.Ed.2d 77 (1971). Chapman agreed to pay Lakian thirty-five percent of his commission sometime between 1989, when Chapman recommended Pine River to Daikyo–Decoma, and July 1990, when Chapman received his first commission and subsequently paid Lakian. Daikyo–Decoma awarded the 1989 work and the 1992 work in 1989 and 1990, respectively. Therefore, unless tolled, Grand Rapids did

not bring its Robinson–Patman claim within the four-year statute of limitations.

The Supreme Court has, however, recognized a "continuing violation" exception to the general four-year statute of limitations.

A continuing antitrust violation is one in which the plaintiff's interests are repeatedly invaded. When a continuing antitrust violation is alleged, a cause of action accrues each time the plaintiff is injured by an act of the defendants. Even when a plaintiff alleges a continuing violation, an overt act by the defendant is required to restart the statute of limitations and the statute runs from the last overt act... An overt act that restarts the statute of limitations is characterized by two elements: (1) it must be a new and independent act that is not merely a reaffirmation of a previous act; and (2) it must inflict new and accumulating injury on the plaintiff.

*DXS, Inc. v. Siemens Med. Sys., Inc.*, 100 F.3d 462, 467–68 (6th Cir.1996) (internal quotations omitted).

▮ Grand Rapids argues that each payment to Lakian, which continued through 1995, was an independent wrongful act that started the statute of limitations running. However, even if the payment agreement constituted a continuing violation of the Robinson–Patman Act, the individual payments to Lakian were only a manifestation of the previous agreement. The individual payments therefore do not constitute a "new and independent act," as required to restart the statute of limitations. *See id.* at 467–68.

▮ Although Grand Rapids does not allege that Chapman and Lakian entered any agreement regarding the 1994 work or the 1998 work, it argues that a jury could infer that the money paid to Lakian for the 1989 and 1992 work also insured that Pine River would receive the 1994 and 1998 work. Nevertheless, even if Grand Rapids offered evidence at trial that allowed the jury to make this inference, Grand Rap-

ids's subsequent failure to obtain the 1994 and 1998 work, awarded in 1992 and 1994, respectively, does not start the statute of limitations running. "For statute of limitations purposes, the focus is on the timing of the causes of injury, i.e., the defendant's overt acts, as opposed to the effects of the overt acts." *Id.* at 467. Grand Rapids's failure to obtain the 1994 or 1998 work, if in fact a result of the commission payment scheme, merely constitutes an effect of the overt act, i.e., the payment scheme, and therefore does not restart the statute of limitations.

▮ Grand Rapids next argues that its claim falls under the speculative damages exception to the four-year statute of limitations, arguing that, because of the nature of the automotive industry, it suffered damages incapable of being proven within four years of the commission of the overt act. With regard to damages that have not yet been suffered or are too speculative to be ascertained at the time a plaintiff's business is injured, the limitations period does not begin to run until the damages are ascertainable. *Zenith*, 401 U.S. at 338, 91 S.Ct. 795. Grand Rapids, the party seeking to avoid the statute of limitations, bears the burden of proof. *Akron Presform Mold Co. v. McNeil Corp.*, 496 F.2d 230, 233 (6th Cir.1974).

Grand Rapids points out that when a contract for automotive parts is awarded, it establishes a price for the parts, but does not obligate the company to order any parts. When a job enters production, parts are ordered by "releases" issued against the original contract. Grand Rapids asserts that because the 1989, 1992, 1994, and 1998 work did not enter production right away, and some projects have continued to the present, the damages suffered as a result of the payment scheme were too speculative to prove within the four-year statute of limitations.

However, this Court has held that a plaintiff's own projections and experience during its years of operation are sufficient to provide a reasonable basis for calculat-

ing damages. *See Kabealo v. Huntington Nat'l Bank*, 17 F.3d 822, 827 (6th Cir. 1994). "If they felt that they could not present sufficiently exact evidence of damages within that time, they could have filed suit and requested a stay.... They acted at their risk in waiting until the statute of limitations had run and the district court correctly determined that their action was barred." *Id.* at 827–28.

Similarly, Grand Rapids acted at its own risk by failing to file its Robinson–Patman claim within the statute of limitations. Grand Rapids is a first-tier supplier to automakers and a second-tier supplier to companies that resell to automakers. Using its experience in the industry, Grand Rapids could have provided a reasonable basis for calculating damages. Even if the potential damages were not initially calculable, the 1989 work went into production in 1990 and was completed by 1992. Grand Rapids could have used the releases issued for that project to allow the jury to reasonably calculate damages. The district court correctly concluded that Grand Rapids did not carry its burden of proving that its losses were so speculative as to fall within the speculative damages exception. Therefore, Grand Rapids's Robinson–Patman Act claims were barred by the statute of limitations.

■ Next, Grand Rapids asserts that the district court erred by granting *sua sponte* summary judgment for Lakian although he neither raised the statute of limitations as a defense nor moved for summary judgment. The Supreme Court has held that a district court may enter summary judgment *sua sponte*, "so long as

the losing party was on notice that she had to come forward with all her evidence." *Celotex Corp. v. Catrett*, 477 U.S. 317, 326, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

In the present case, the other parties' motions for summary judgment put Grand Rapids on notice that, to survive summary judgment, it had to come forward with evidence showing that the statute of limitations did not bar its Robinson–Patman claims. Therefore, although Lakian did not move for summary judgment, and in fact did not raise the statute of limitations defense in his answer, the district court did not err in granting *sua sponte* summary judgment in favor of Lakian.

### III.

■ Finally, Grand Rapids asserts that the district court erred by dismissing its tortious interference claim, arguing that it presented sufficient evidence to create a genuine issue of material fact regarding a valid business relationship or expectancy.[1]

■ To establish a claim for tortious interference under Michigan law, a plaintiff must show: (1) the existence of a valid business relation or expectancy, (2) knowledge of the relationship or expectancy on the part of the defendant, (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy, and (4) resultant damage. *Michigan Podiatric Med. Ass'n v. National Foot Care Program, Inc.*, 175 Mich.App. 723, 438 N.W.2d 349, 354 (1989). The district court dismissed the tortious interference claim on the first factor, holding that Grand Rapids had not presented a

---

1. The district court had supplemental jurisdiction over Grand Rapids's state law tortious interference claim pursuant to 28 U.S.C. § 1367, which explicitly allows district courts to dismiss pendent state law claims if all federal claims have been dismissed. *See* 28 U.S.C. § 1367(c)(3). Therefore, upon dismissing Grand Rapids's Robinson–Patman claim, it was within the district court's authority and discretion to dismiss the state law tortious interference claim. *See Musson Theatrical, Inc. v. Federal Express Corp.*, 89 F.3d

1244, 1254 (6th Cir.1996). Although generally, "if the federal claims are dismissed before trial ... the state claims should be dismissed as well," *Hankins v. The Gap, Inc.*, 84 F.3d 797, 803 (6th Cir.1996) (internal quotations omitted), the district court in the present case ·elected to address Grand Rapids's state law tortious interference claim "in the interest of judicial economy." Accordingly, we find that the district court did not abuse its discretion in addressing the claim.

genuine issue of fact as to whether it had an existing business relationship or expectancy of one with which the payment scheme interfered.

When Lakian and Chapman agreed to split commissions in 1989, Grand Rapids and Daikyo–Decoma had no existing business relationship. In fact, neither party knew of the other until July 1990, when Lakian introduced Grand Rapids Plastics to Daikyo–Decoma. Grand Rapids bid on the console work that Pine River had declined and was awarded the job in October 1990. Therefore, before 1990, Grand Rapids can allege at most an expectancy of a business relationship.

 "The expectancy must be a reasonable likelihood or probability, not mere wishful thinking." *Trepel v. Pontiac Osteopathic Hosp.*, 135 Mich.App. 361, 354 N.W.2d 341, 348 (1984). Grand Rapids argues that because it was eligible to do work with Daikyo–Decoma, allegations of bid-rigging are enough to state a tortious interference claim. It relies on *Advanced Power Sys. v. Hi–Tech Sys.*, 801 F.Supp. 1450 (E.D.Pa.1992), where the plaintiff "was one of a limited number of approved subcontractors eligible to bid for IBM's business." The court therefore held that the averment of a rigged bidding process sufficiently establishes a "reasonable likelihood or probability" that an anticipated business arrangement would have been consummated but for APS's interference. *Id.* at 1459–60.

However, Grand Rapids has offered no evidence to show that it was one of a limited number of companies eligible to bid for Daikyo–Decoma's business. Instead, Grand Rapids states that it was one of only two companies to whom Daikyo–Decoma **awarded** or asked to bid on this type of work since 1989. Because Daikyo–Decoma had no knowledge of Grand Rapids until Lakian introduced them in July 1990, Grand Rapids cannot show an expectancy of a business relationship for either the 1989 or 1992 work.

Similarly, Grand Rapids had no legitimate expectancy of being awarded either the 1994 or 1998 work. The fact that Daikyo–Decoma hired Grand Rapids to do some work in 1990 did not indicate that it would hire Grand Rapids for the 1994 or 1998 work. Nowhere is the standard for proving tortious interference better stated than in *Lewis v. Bloede*, 202 F. 7 (4th Cir.1912). There, the court said, "if the ground of complaint is that [the plaintiff] was about to ·make a contract, he is required to go further and show that he was not only 'about to,' but would, but for the malicious interference of defendants, have entered into the contract." *Id.* at 17. Grand Rapids has failed to offer evidence to show that, but for Chapman's agreement with Lakian, Daikyo–Decoma would have entered into a contract with Grand Rapids for either the 1994 or the. 1998 work. The district court correctly dismissed Grand Rapids's tortious interference claim because Grand Rapids failed to present sufficient evidence to create a genuine issue of material fact regarding a valid business relationship or expectancy. AFFIRMED.