**[Cite as *Estate of Szabrak v. Ley*, 2026-Ohio-991.]**

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| ESTATE OF LAWRENCE SZABRAK, ET AL. | |
| | Case No. 2025 CA 0080 |
| Plaintiffs - Appellants | Opinion And Judgment Entry |
| -vs- | Appeal from the Richland County Court of Common Pleas, Case No. 2024 CV 394N |
| CAROLYN S. LEY, ET AL. | |
| Defendants – Appellees | Judgment: Affirmed |
| | Date of Judgment Entry: March 23, 2026 |

**BEFORE:** CRAIG R. BALDWIN, P.J., ROBERT G. MONTGOMERY, J., & KEVIN W. POPHAM, J.; Appellate Judges

**APPEARANCES:** CHARLES M. ELSEA, DANIEL J. FRUTH, KATHRYN M. MCILROY, for Plaintiffs-Appellants; DAVID N. HARING for Defendants-Appellees

OPINION

*Popham, J.,*

{¶1} Appellants in this case are the Estate of Lawerence E. Szabrak and Lawrence Szabrak's children, Donna Allen, Laura Gallagher, Diane Middeke, William Szabrak, and Richard Szabrak (collectively, "the Szabrak Plaintiffs"). Appellees are Carolyn Ley and her son Michael Vogel. Appellants appeal the judgment entries of the Richland County Court of Common Pleas granting Ley and Vogel's motion to strike and granting Ley and Vogel's motion for summary judgment. For the reasons below, we affirm.

*Facts & Procedural History*

{¶2}     Decedent Lawrence Szabrak ("Decedent") and Ley met in 2005, developed a friendship, and later began dating. Their romantic relationship continued until Decedent's death on December 24, 2023.

{¶3}     In 2012, Decedent purchased a home located at 1385 Royal Oak Trail in Mansfield, Ohio (the "Property"). He purchased the home using his own funds. Decedent and Ley continued living in their separate homes until 2013, at which time Ley moved into the Royal Oak home with Decedent and remained there until February of 2024.

{¶4}     In October 2013, Decedent consulted with Attorney Jon Burton ("Burton"). Decedent informed Burton that he wanted to leave his estate to his children, but wanted Ley to have a present interest in the Property so she would feel that his home was also her home. Burton and Decedent discussed granting Ley a life estate and preparing transfer-on-death affidavits benefiting Decedent's children. However, instead of granting Ley a life estate, Decedent chose to convey a one-half interest in the Property to Ley by quit-claim deed.

{¶5}     Burton prepared the estate planning documents for Decedent. On October 31, 2013, Decedent executed the following documents at Burton's office: (1) A Last Will and Testament leaving his entire estate to his children; (2) A quit-claim deed conveying an undivided one-half interest in the Property to Decedent and Ley, which was recorded with the Richland County Recorder on November 4, 2013; (3) an "explanatory affidavit," which was not recorded, stating that Decedent's conveyance of a one-half interest in the Property to Ley was not intended as a gift but rather to provide Ley with a residence for her lifetime and that Decedent intended for Ley's half-interest to transfer to his children upon her death or upon her ceasing to reside at the Property; and (4) a Transfer on Death

Affidavit designating Decedent's children as beneficiaries of his one-half interest in the Property, which was recorded on November 4, 2013.

{¶6} On the same day, Ley executed a Transfer on Death Affidavit designating Decedent's children as beneficiaries of her respective future interests in her undivided one-half interest in the Property. This affidavit was also recorded on November 4, 2013.

{¶7} Ley testified that she and Decedent never discussed the Transfer of Death affidavits as part of the agreement for Decedent to transfer her an interest in the Property and that she simply signed the documents Burton provided to her in October of 2013.

{¶8} In 2015, Ley engaged in her own estate planning with Burton. On February 11, 2015, Ley executed a second Transfer on Death Affidavit ("Second TOD Affidavit"). The affidavit was recorded with the Richland County Recorder on February 17, 2015. This affidavit revoked any prior beneficiary designations and instead designated Vogel as the beneficiary who would receive title to Ley's one-half interest in the Property upon her death.

{¶9} In her deposition, Ley testified that Decedent told her he did not care what she did with her interest in the Property and that Decedent knew that she executed the Second TOD Affidavit. The Szabrak Plaintiffs dispute this testimony.

{¶10} Decedent died on December 24, 2023. The Estate of Lawrence Szabrak was opened on May 16, 2024, and Richard was appointed executor of the estate on May 18, 2024.

{¶11} On August 8, 2024, Decedent's estate, and each one of Decedent's children individually, filed a complaint against Ley and Vogel – asserting the following claims: Count 1 – Fraudulent Inducement; Count 2 – Constructive Trust; Count 3 – Resulting Trust; and Count 4 – Partition.

{¶12} Ley and Vogel filed a motion for summary judgment. The Szabrak Plaintiffs filed their own motion for summary judgment. The parties subsequently filed responses and replies.

{¶13} Attached to the Szabrak Plaintiffs' motion for summary judgment were transcriptions of two conversations - dated November 23 and 28, 2023 - purportedly involving Decedent and recorded on cell phones. Richard executed an affidavit stating that the individuals present during the November 23, 2023, conversation were himself, Decedent, William, and Ley. Richard further stated that he recorded the conversation on his phone and that the audio recording accurately portrays the conversation.

{¶14} William executed an affidavit stating that the individuals present during the November 28, 2023, conversation were himself and Decedent. William likewise stated that he recorded the conversation on his phone and that the audio recording accurately portrays the conversation.

{¶15} Ley and Vogel filed a motion to strike unsworn statements of Decedent. On August 5, 2025, the trial court granted the motion – striking the Decedent's recorded statements[1].

{¶16} On August 21, 2025, the trial court issued a judgment entry granting Ley and Vogel's motion for summary judgment and denying the Szabrak Plaintiffs' motion for summary judgment. The trial court provided four reasons why the Szabrak Plaintiffs' fraudulent inducement claim failed: (1) the claim was barred by the statute of limitations; (2) the Szabrak Plaintiffs failed to plead fraud with particularity as required by Civil Rule 9(B); (3) the allegedly fraudulent representations were not made to any of the plaintiffs

---

[1] The cell phone recordings were presented to a court reporter, who prepared transcripts of the recordings, which were submitted with the affidavits.

to induce them to act; and (4) the Szabrak Plaintiffs failed to produce any Civil Rule 56 evidence to rebut the Civil Rule 56 evidence presented by Ley and Vogel.

{¶17} The trial court also found that, because the Szabrak Plaintiffs, Ley, and Vogel had all been divested of their interests in the Property due to its subsequent sale to a third-party purchaser, no cause of action for partition would lie.

{¶18} Finally, the trial court found that the resulting trust and constructive trust claims asserted in the Szabrak Plaintiffs' complaint were equitable remedies rather than stand-alone causes of action and were premised on the fraudulent inducement claim. Because the fraudulent inducement claim was time-barred, those equitable remedies were likewise time-barred. The court therefore concluded that, with no remaining claims upon which to impose an equitable remedy, Ley and Vogel were entitled to summary judgment on those claims.

{¶19} The Szabrak Plaintiffs appeal the judgment entries of the Richland County Court of Common Pleas and assign the following as error:

{¶20} "I. THE TRIAL COURT ERRED AS A MATTER OF LAW BY FINDING THAT REASONABLE MINDS COULD NOT CONCLUDE THAT DEFENDANT-APPELLEE CAROLYN S. LEY TOOK THE SUBJECT REAL ESTATE BY LEGAL TITLE ONLY, WITH BENEFICIAL OWNERSHIP SUBJECT TO A RESULTING TRUST."

{¶21} "II. THE TRIAL COURT ERRED AS A MATTER OF LAW BY GRANTING DEFENDANTS-APPELLEES' MOTION FOR SUMMARY JUDGMENT ON PLAINTIFFS-APPELLANTS' CLAIM FOR FRAUDULENT INDUCEMENT BECAUSE PROPER AND SUFFICIENT EVIDENCE EXISTS OF CONTINUOUS ACTS OF FRAUDULENT ACTIVITY WITHIN FOUR YEARS BEFORE THE UNDERLYING ACTION WAS INITIATED IN THE TRIAL COURT."

**{¶22}** "III. THE TRIAL COURT ERRED AS A MATTER OF LAW BY GRANTING DEFENDANTS-APPELLEES' MOTION FOR SUMMARY JUDGMENT ON PLAINTIFFS'-APPELLANTS' CLAIM FOR PARTITION BECAUSE THE TRIAL COURT RETAINED JURISDICTION TO EQUITABLY DIVIDE THE PROCEEDS OF THE SALE OF THE PROPERTY."

**{¶23}** "IV. THE TRIAL COURT ERRED AS A MATTER OF LAW BY GRANTING DEFENDANTS-APPELLEES' MOTION TO STRIKE UNSWORN STATEMENTS OF LAWERENCE SZABRAK BECAUSE THE STATEMENTS WERE ADMISSIBLE EVIDENCE OF LAWRENCE SZRABRAK'S INTENT."

**{¶24}** For ease of discussion, we will address the assignments of error out of order. In the Szabrak Plaintiffs' first, second, and third assignment of errors, they contend the trial court committed error in granting Ley and Vogel's motion for summary judgment.

*Summary Judgment Standard*

**{¶25}** Civil Rule 56 states, in pertinent part:

Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party

being entitled to have the evidence or stipulation construed most strongly in the party's favor. A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages.

{¶26} Summary judgment may be granted only after the trial court determines that: (1) no genuine issues as to any material fact remain to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion and, viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party. *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317 (1977). A court may not resolve any ambiguities in the evidence presented. *Inland Refuse Transfer Co. v. Browning-Ferris Inds. Of Ohio, Inc.*, 15 Ohio St.3d 321, 322 (1984).

{¶27} A genuine issue of fact exists when "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *DayCab Co., Inc. v. Prairie Technology, LLC*, 67 F.4th 837, 846 (6th Cir. 2023) (quotations omitted); *Lang v. THK Mfg. of Am., Inc.*, 2025-Ohio-4811 (5th Dist.). Summary judgment consists of a burden-shifting framework. *Dresher v. Burt*, 75 Ohio St.3d 280, 294 (1996). The movant bears the initial burden of demonstrating the absence of genuine issues of material fact concerning the essential elements of the nonmoving party's case. *Id.* Once this burden is met, the burden shifts to the nonmoving party. *Id.* According to Civil Rule 56(E), the nonmoving party may not rest on mere allegations or denials in their pleadings but must set forth specific facts showing a genuine issue for trial. *Id.* at 293.

{¶28} When reviewing a trial court's decision to grant summary judgment, an appellate court applies the same standard used by the trial court. *Smiddy v. The Wedding*

*Party, Inc.*, 30 Ohio St.3d 35, 35 (1987).  This means we review the matter de novo.  *Doe v. Shaffer*, 90 Ohio St.3d 388, 390 (2000).

II.

{¶29}  In their second assignment of error, the Szabrak Plaintiffs argue the trial court erred in granting summary judgment to Ley and Vogel on their claim for fraudulent inducement.  We disagree.

{¶30}  A claim for fraudulent inducement arises when a party is induced to enter into an agreement through fraud or misrepresentation.  *Abm Farms v. Woods*, 81 Ohio St.3d 498 502 (1997).  "The fraud relates not to the nature or the purport of the [contract], but to the facts inducing its execution …".  *Id.*

### *Statute of Limitations*

{¶31}  Claims for fraudulent inducement are governed by the four-year statute of limitations set forth in R.C. 2305.09.

{¶32}  Under Ohio law, the "discovery rule" generally provides that a cause of action accrues when the plaintiff discovers, or in the exercise of reasonable diligence should have discovered, the injury.  *Investors Reit One v. Jacobs*, 46 Ohio St.3d 176, 179 (1989).  In determining whether fraud should have been discovered through reasonable diligence, the relevant inquiry is whether the facts known would lead a fair and prudent person, exercising ordinary care and thoughtfulness, to make further inquiry.  *Cundall v. U.S. Bank.*, 122 Ohio St.3d 188, 194 (2009).

{¶33}  Constructive knowledge of facts, rather than actual knowledge of their legal significance, is sufficient to trigger the running of the statute of limitations.  *Id.*  It is the knowledge of the facts – not knowledge of legal theories – that begins the limitations period.  *Id.*

{¶34} The Szabrak Plaintiffs were placed on constructive notice when the Second TOD Affidavit was recorded in 2015. *Emrick v. Multicon Builders*, 57 Ohio St.3d 107, 109 (1991). "Recordation gives constructive notice to all persons dealing with the land of properly recorded instruments in the chain of title." *Wilson Court 2, LLC v. Suarez*, 2020-Ohio-5074, ¶ 38 (5th Dist.); *Deutsche Bank Nat'l Trust Co. v. Hill*, 2015-Ohio-1575, ¶ 29 (5th Dist.). "It is the object and purpose of recording . . . to furnish notice to the world of the existence of the instrument." *U.S. Bank, N.A. v. Mitchell*, 2018-Ohio-4887, ¶ 17 (2nd Dist.).

{¶35} Because the Second TOD Affidavit was recorded in February of 2015, the Szabrak Plaintiffs were charged with constructive notice at that time. The complaint, filed in 2024, was, therefore, filed well beyond the expiration of the four-year statute of limitations, R.C. 2305.09, in 2019.

*Continuing Violation*

{¶36} The Szabrak Plaintiffs argue their claim falls within the continuing violation exception to the four-year statute of limitations.

{¶37} When a continuing violation is alleged, a cause of action accrues each time the plaintiff is injured by an act of the defendant, and the statute of limitations does not begin to run until the tortious conduct ceases. *Mason v. Bowman*, 2010-Ohio-2325, ¶ 12 (10th Dist.). A continuing violation requires continual unlawful acts that cause ongoing damage until the conduct stops. *Craver v. Doogan*, 2006-Ohio-1783, ¶ 11 (12th Dist.).

{¶38} However, even when a continuing violation is alleged, an overt act by the defendant is required to restart the statute of limitations. *Grand Rapids Plastics, Inc. v. Lakian*, 188 F.3d 401, 406 (6th Cir. 1999). Such an overt act must: (1) constitute a new and independent act, rather than merely a reaffirmation of a prior act, and (2) inflict new

and accumulating injury upon the plaintiff. *Id.* A continuing violation exists when there are ongoing unlawful acts; it does not exist when there are merely ill effects from an earlier violation. *Ashiegbu v. Purviance*, 74 F.Supp.2d 740, 748 (S.D. Ohio 1998).

{¶39} The Szabrak Plaintiffs contend their complaint sufficiently alleges a continuous tort theory, with continual fraudulent activity by Ley, the latest of which occurred in November of 2023. The problem with this argument is that the Szabrak Plaintiffs failed to allege any continuing fraud or continuing tort activity in their complaint. Likewise, the complaint does not contain the November 2023 date. Rather, the complaint only references three time periods: (1) the execution of the quit-claim deed and related estate documents in 2013; (2) the execution of the Second TOD Affidavit in 2015; and (3) the date of Decedent's death in December of 2023.

{¶40} The allegations in the complaint demonstrate that the fraudulent inducement claim is based entirely on events occurring in 2013 or 2015. The Szabrak Plaintiffs allege that Decedent granted Ley an interest in the Property in 2013 based upon her representation that she would pass her interest to his children upon her death, and that Decedent relied upon her representation and otherwise would not have granted Ley an interest in the Property had he known about her intention to transfer her interest to Vogel. They further allege that Ley "surreptitiously" executed the Second TOD Affidavit in 2015 naming Vogel as beneficiary.

{¶41} The remedy the Szabrak Plaintiffs seek confirms this timeline. They request that the quit-claim deed recorded in 2013 be voided and that the Second TOD Affidavit be declared invalid.

{¶42} The only allegation in the complaint regarding Ley's actions after 2015 is that, during his "final illness", Decedent "confronted Ley about the deal they had relative

to the Property requiring Ley to further convey her interest to each of Lawrence Szabrak's children upon her death."

{¶43} As detailed below, any alleged fraud stemming from this incident is not pled with particularity. Further, this allegation does not establish a continuing violation because it does not allege a new or independent act by Ley. Rather, it merely references the alleged agreement made in 2013. Nor does this allegation demonstrate any new or accumulating injury. The alleged injury – the loss of Decedent's children's interest in Ley's one-half interest in the Property – occurred, at the latest, when Ley executed and recorded the Second TOD Affidavit in 2015.

{¶44} Accordingly, the trial court did not err in concluding that no continuing fraud or continuing tort existed to extend the four-year statute of limitations.

*Deposition Testimony*

{¶45} The depositions of Decedent's children further confirm that the fraudulent inducement claim is based on events occurring in 2013 or 2015.

{¶46} William testified that the fraudulent inducement claim arises from Ley's alleged agreement that her one-half interest in the Property would pass to Decedent's children and her subsequent decision to change the TOD beneficiary in 2015. Richard testified that the alleged fraudulent act occurred when Ley completed the estate planning paperwork with Decedent in 2013 and later changed the TOD beneficiary in 2015.

{¶47} Diane testified that the fraud claim was based on Ley's failure to contribute money toward the Property and Ley's decision to change the TOD beneficiary in 2015. Laura testified that she believes Ley committed fraud by executing the Second TOD Affidavit naming her son as beneficiary in 2015.

{¶48} This testimony confirms that the alleged fraudulent conduct occurred no later than 2015.

{¶49} Because there is no genuine issue of material fact regarding the accrual date of the fraudulent inducement claim, the trial court did not err in concluding the claim is barred by the four-year statute of limitations.

*Constructive Trust*

{¶50} Contained within this assignment of error is an argument by the Szabrak Plaintiffs that, because the trial court erred in barring their fraudulent inducement claim, it likewise erred by denying their request for a constructive trust.

{¶51} The Supreme Court of Ohio has held, "if the cause of action in which imposition of a constructive trust is sought as a remedy is barred by a statute of limitation, the imposition of a constructive trust is likewise barred." *Cundall v. U.S. Bank*, 122 Ohio St.3d 188, 196 (2009).

{¶52} Because the underlying fraudulent inducement claim is time-barred, the request for a constructive trust is likewise barred.

### Pleading Fraud with Particularity

{¶53} A plaintiff alleging fraud must plead the circumstances constituting fraud with particularity. Civ.R. 9(B); *Ettayem v. H.E.R., LLC*, 2020-Ohio-4647 (5th Dist.). The circumstances constituting fraud include the time, place, and content of the false representation; the fact misrepresented; the identity of the individual making the representation; and the nature of what was obtained or given as a result of the fraud. *Id.*

{¶54} This Court has previously found that fraud complaints are not pled with particularity when the allegations contained in the complaint are general. *First-Knox Nat'l Bank v. MSD Props., Ltd.*, 2015-Ohio-4574 (5th Dist.) (general allegation that

appellants were misled when they entered a lease did not plead fraud with particularity); *Advanced Prod. Ctr., Inc. v. Emco Maier Corp.*, 2003-Ohio-6206 (5th Dist.) (complaint failing to allege time or place of the false representation and failing to set forth the individual who made the false representation was insufficient); *Miller v. Med. Mut. of Ohio*, 2013-Ohio-3179 (5th Dist.) (fraud complaint not pled with particularity when failed to identify contents of allegations, when allegations made, the falsity of the allegations).

{¶55} We agree with the Szabrak Plaintiffs that, when the allegations contained in the "Facts Common to All Claims" section of the complaint are considered together with the allegations contained in the "Fraudulent Inducement" section, the complaint sufficiently pleads fraud with respect to the events occurring in 2013. However, as discussed above, any claim arising from those events is barred by the four-year statute of limitations.

{¶56} In an attempt to overcome the statute of limitations, the Szabrak Plaintiffs argue that their complaint also pleads a theory of "continuing fraud" that extended into November of 2023. The complaint, however, contains no allegation of a "continuing fraud" and does not identify any specific instances of fraud or alleged misrepresentations occurring in 2023. The November 2023 date cited by the Szabrak Plaintiffs likewise does not appear in the complaint. Civil Rule 9(B) does not permit allegations of fraud by inference. *Wolff v. Dunning Motor Sales*, 2021-Ohio-740, ¶ 46 (5th Dist.).

{¶57} The only allegation in the complaint referencing events occurring after 2013 or 2015 states: "[j]ust weeks prior to his death in his final illness, Lawerence Szabrak confronted Defendant Ley about the deal they had relative to the Property requiring Ley to further convey her interest to each of Lawrence Szabrak's children upon her death." This allegation does not provide the time, place, or content of any false representation,

identify the fact misrepresented, or describe what Ley obtained as a result of the alleged fraud that occurred *after* Decedent deeded one-half interest in the Property to her. Accordingly, the complaint does not plead any fraud occurring in 2023 or any "continuing fraud" with the particularity required by Civil Rule 9(B).

{¶58} The complaint therefore fails to plead any fraudulent conduct beyond the events occurring in 2013 or 2015. Because Civil Rule 9(B) requires fraud to be pled with particularity, the Szabrak Plaintiffs cannot now assert new theories of fraud that were not included in their complaint. *Coleman v. Galati*, 2017-Ohio-8034, ¶ 19 (5th Dist.).

### Duty to Disclose and Damages

{¶59} The depositions of Decedent's children confirm that Ley never made any affirmative representations to them regarding what she intended to do with her one-half interest in the Property. Nevertheless, Decedent's children argue that Ley had a duty to disclose that she executed the Second TOD Affidavit and that the alleged fraudulent inducement arises from Ley's intentional omission that she intended to change the beneficiary of her undivided one-half interest in the Property. Whether a duty to disclose exists is a question of law. *Crawford v. Stan*, 2012-Ohio-3624, ¶ 18 (5th Dist.).

{¶60} Fraud based on nondisclosure exists only where the defendant has a duty to disclose. *Advanced Prods. Ctr.*, 2003-Ohio-6206 at ¶ 14. "The duty to disclose arises when one party has information that the other party is entitled to know because of a fiduciary or another similar relation of trust and confidence between them." *Strategy Group for Media v. Lowden*, 2013-Ohio-1330, ¶ 28 (5th Dist.). While a fiduciary relationship may arise from an informal relationship, such a relationship exists only where both parties understand that a "special trust or confidence has been reposed." *Umbaugh Pole Bldg. Co. v. Scott*, 58 Ohio St.2d 282, 282 (1979).

{¶61} The deposition testimony of Decedent's children establishes that they did not have such a relationship with Ley. Each described their relationship with her as "not close" or "not good." Accordingly, no fiduciary or confidential relationship existed that would create a duty for Ley to disclose information to them.

{¶62} Moreover, a party cannot maintain a fraud action where the alleged misrepresentations were not made directly to the party for the purpose of inducing that party to act. *Baddour v. Fox*, 2004-Ohio-3059, ¶ 41 (5th Dist.). None of Decedent's children testified that Ley made any affirmative representations to them, let alone that they were induced to act by any such representation. Accordingly, Decedent's children have failed to state a valid cause of action for fraudulent inducement. *Wells v. Cook*, 16 Ohio St. 67, 68 (1865); *Sooy v. Ross Incineration Services,* 1999 Ohio App. LEXIS 4889 (9th Dist.).

{¶63} The relationship between Decedent and Ley, however, was one that arguably involved trust and confidence, potentially giving rise to a duty to disclose.

### Decedent's Fraudulent Inducement Claim

{¶64} The only party to whom Ley arguably owed a duty to disclose was Decedent. Decedent is a party to this action through the inclusion of his estate as a plaintiff. Even construing the evidence in the light most favorable to Decedent, we find no genuine issue of material fact exists as to his fraudulent inducement claim.

{¶65} To prevail on a claim for fraudulent inducement, one must show, by clear and convincing evidence: (1) a representation (or concealment of a fact when there is a duty to disclose); (2) that is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (4) with intent to mislead another into

relying upon it; (5) justifiable reliance; and (6) resulting injury proximately caused by the reliance. *Volbers-Klarich v. Middletown Mgmt., Inc.*, 2010-Ohio-2057, ¶ 27.

**{¶66}** A claim for fraudulent inducement arises when a party is induced to enter into an agreement through fraud or misrepresentation. *Abm Farms*, 81 Ohio St.3d at 502. The only transaction executed by Decedent in this case was the quit-claim deed conveying a one-half interest in the Property to Ley in 2013. As discussed above, any claim arising from that transaction is barred by the four-year statute of limitations.

**{¶67}** During the November 28, 2023, conversation, Decedent discussed writing Ley a $20,000 check for upkeep of the Property for the period during which Ley chose to stay at the Property. It is undisputed, however, that Decedent never wrote such a check.

**{¶68}** Once the quit-claim deed was executed in 2013, the "transaction" was complete. Any later statements or omissions by Ley could not have induced Decedent to execute the deed. Decedent therefore could not have justifiably relied on any statements or omissions by Ley occurring after October 31, 2013, because the act of transferring the one-half interest in the Property had already been completed.

**{¶69}** Similarly, Ley's allegedly "surreptitious" execution and recording of the Second TOD Affidavit in 2015 cannot serve as the basis for a fraudulent inducement claim by Decedent. That act occurred after the property interest had already been transferred and, therefore, could not have induced the transfer.

**{¶70}** Nor have the Szabrak Plaintiffs demonstrated that Decedent suffered any damages as a result of Ley's alleged conduct. The only damages identified in the complaint ("caused harm to the rightful beneficiaries of the Property by losing half of their interest in said Property upon Decedent's death") and in the deposition testimony are that Decedent's children lost their expected interest in Ley's one-half interest in the Property.

However, a plaintiff "fails to state a valid cause of action for fraud when he alleges that a third party relied on misrepresentations made by a defendant and that he suffered injury from the third party's reliance." *Moses v. Sterling Commerce Am., Inc.*, 2002-Ohio-4327, ¶ 15 (10th Dist.); *Lucarell v. Nationwide Mut. Ins. Co.*, 2018-Ohio-15, ¶ 6. This is because "the elements of fraud must be directed against the alleged victim." *Moses*, 2002-Ohio-4327 at ¶ 15. Because the alleged injury concerns the interests of Decedent's children rather than Decedent himself, Decedent, through his estate, cannot establish the required elements of a fraudulent inducement claim.

{¶71} Accordingly, Decedent's estate has failed to establish a prima facie case of fraudulent inducement.

{¶72} For the above-detailed reasons, the Szabrak Plaintiffs' second assignment of error is overruled.

### III.

{¶73} In their third assignment of error, the Szabrak Plaintiffs contend the trial court erred in granting summary judgment to Ley on their partition claim. We disagree.

{¶74} "Under Ohio law, an owner in fee simple has the right, pursuant to R.C. 5307.01 through R.C. 5307.25, to seek partition of land in which he has an interest." *Bryan v. Looker*, 94 Ohio App.3d 228, 231 (3rd Dist. 1994). Although an action for partition is equitable in nature, it is ultimately controlled by statute. *Thrasher v. Watts*, 2011-Ohio-2844, ¶ 24 (2nd Dist.); *Russell v. Russell*, 137 Ohio St. 153 (1940). While courts may apply equitable principles in order to ensure an equitable partition, they must still comply with the statutory procedures set forth in R.C. Chapter 5307. *Id.*

{¶75} R.C. 5307.01 provides that "tenants in common, survivorship tenants, and coparceners, of any estate in lands . . . may be compelled to make or suffer partition

thereof as provided in sections 5307.01 to 5307.25 of the Revised Code." Here, Ley and the Szabrak Plaintiffs are no longer tenants in common because the Property has been sold to an unrelated, third-party purchaser.

{¶76} To obtain partition, the plaintiff must demonstrate: (1) title to some part of the real estate *and* (2) possession of the property or an immediate right to possession. *Lauer v. Green*, 99 Ohio St. 20, 20 (1918); *Bryan*, 94 Ohio App.3d at 231; *Wyckoff v. Wyckoff,* 2009-Ohio-4740, ¶ 12 (5th Dist.). As this Court has previously held, only one who has the right of entry has a right to seek partition. *Wyckoff*, 2009-Ohio-4740, ¶ 12, citing *Tabler v. Wiseman*, 2 Ohio St. 207 (1853). "Possession or immediate right to possession is essential to a right of partition." *Adkins v. Adkins*, 97 Ohio App. 185, 186 (10th Dist. Feb. 8, 1954).

{¶77} To be sure, the Property was sold and deeded to an unrelated third-party purchaser. As a result, neither the Szabrak Plaintiffs nor Ley possess the Property, nor do they have an immediate right to possession or right of entry.

{¶78} Additionally, neither party retains title to any portion of the Property. The parties' co-tenancy was extinguished when the Property was conveyed to the third-party purchaser. Because the co-tenancy has been extinguished, the Szabrak Plaintiffs no longer have a right to seek partition. *Alpers v. Alpers*, 1993 Ohio App. LEXIS 6078, at *8 (11th Dist. Dec. 17, 1993) (once co-tenancy extinguished, appellant has no right to a partition); *Reel v. Reel*, 2016-Ohio-8116 ¶ 41 (11th Dist.) ("the right to partition depends solely upon the existence of the privity of estate, i.e., the existence of a cotenancy"); *Mace v.* Mace, 2023-Ohio-2761 (4th Dist.).

{¶79} Because the Szabrak Plaintiffs have failed to demonstrate that they possess both (1) title to some portion of the real estate and (2) possession or the immediate right

to possession of the Property, they have not satisfied the threshold requirements necessary to bring a partition action. *Wyckoff*, 2009-Ohio-4740 at ¶ 12.

*Mootness*

{¶80} The trial court also determined that the Szabrak Plaintiffs' request for a writ of partition was moot due to the sale of the property. We agree.

{¶81} Courts generally will not resolve issues that have become moot. *In re Brown*, 2005-Ohio-2425, ¶ 15 (10th Dist.). Actions are moot "when they are or have become fictitious, colorable, hypothetical, academic, or dead." *Grove City v. Clark*, 2002-Ohio-4549, ¶ 11 (10th Dist.). "A moot case is one which seeks to get a judgment on a pretended controversy, when in reality there is none, or a decision in advance about a right before it has been actually asserted and contested, or a judgment upon some matter which, when rendered, for any reason cannot have any practical legal effect upon a then-existing controversy." *Id.*

{¶82} Mootness presents a jurisdictional issue because courts are tasked with resolving adversarial legal disputes and issuing judgments capable of being carried into effect. *Cyran v. Cyran*, 2018-Ohio-24, ¶ 9, citing *Fortner v. Thomas*, 22 Ohio St.2d 13, 14 (1970).

{¶83} The Supreme Court of Ohio has stated, "an event that causes a case to be moot may be proved by extrinsic evidence outside the record." *State ex rel. Nelson v. Russo*, 89 Ohio St.3d 227, 228 (2000), quoting *Pewitt v. Lorain Corr. Ins.*, 64 Ohio St.3d 470 (1992). Further, an issue or question can be found moot due to a new fact or change in the circumstances of a case. *State ex rel. Ryant Comm. v. Lorain Cty. Bd of Elections*, 86 Ohio St.3d 107 (1999).

{¶84} To issue a writ of partition, a trial court must determine that the plaintiff has a legal interest in the property. R.C. 5307.04. Because the Property in this case has already been sold to a third party, the Szabrak Plaintiffs no longer possess any legal interest in the Property. Accordingly, the trial court cannot issue a writ of partition. In their complaint, the Szabrak Plaintiffs request a "forced sale" of the Property. However, because the Property has already been sold, a forced sale pursuant to R.C. Chapter 5307 is no longer possible.

{¶85} Moreover, once a court orders partition, several statutory procedures must be followed before a sale may occur, including appraisal and sale procedures set forth in R.C. 5307.09, 5307.11, and 5307.12. The Szabrak Plaintiffs essentially request that the trial court equitably divide the proceeds from the completed sale pursuant to R.C. 5307.14 without complying with the remainder of R.C. Chapter 5307.

{¶86} Although courts possess certain equitable powers in partition actions, those powers cannot override the statutory procedures governing partition. *Redmon v. Surina*, 2005-Ohio-2472, ¶ 13 (4th Dist.); *Thrasher v. Watts*, 2011-Ohio-2844, ¶ 24 (2nd Dist.). Because the Property has already been sold, the statutory requirements for partition cannot be satisfied, and the issuance of a writ of partition would have no practical effect.

{¶87} Accordingly, the trial court did not err in concluding that the Szabrak Plaintiffs' request for partition was moot.

*Nature of the Claim*

{¶88} In determining the applicable statute of limitations, courts examine the actual nature of the claim rather than the form in which it is pled. *Hambleton v. R.G. Barry Corp.*, 12 Ohio St.3d 179, 183 (1984). "The grounds for bringing the action are the determinative factors; the form is immaterial." *Id.* It is well settled that a "party cannot

transform one cause of action into another through clever pleading or an alternative theory of law in order to avail itself of a more satisfactory statute of limitations." *Id.*

{¶89} Here, the Szabrak Plaintiffs' partition claim rests on the assertion that they possess a legal or equitable interest in Ley's one-half interest in the Property that must be distributed to them pursuant to R.C. 5307.14. That asserted interest arises from the alleged agreement in 2013 that Ley would transfer her interest to Decedent's children upon her death and from the claim that Ley fraudulently induced Decedent to convey the property interest to her.

{¶90} Thus, the partition claim is predicated upon the same alleged fraudulent conduct underlying the fraudulent inducement claim. The Szabrak Plaintiffs cannot recast a fraud claim as a partition claim in order to avoid the applicable statute of limitations, particularly where they also seek to bypass the statutory procedures contained in R.C. Chapter 5307.

*Equity*

{¶91} Finally, this Court has recognized that, in partition actions, "where the rights of the parties are not clearly defined in law, broad equitable principles of fairness apply and will determine the outcome of each case individually." *Seese v. Clark*, 2016-Ohio-3443, ¶ 23 (5th Dist.). However, where the parties' rights are clearly defined and established by law, "the equity follows the law." *JPMorgan Chase Bank, N.A. v. Jackson*, 2014-Ohio-320, ¶ 27 (5th Dist.).

{¶92} In this case, Decedent chose to convey to Ley an undivided one-half interest in the Property through a quit-claim deed. Decedent's attorney (Burton) avers that during estate planning discussions in 2013, Decedent considered alternative arrangements, including granting Ley a life estate and executing a transfer on death affidavit naming his

children as beneficiaries. Instead, Decedent specifically elected to convey a one-half interest to Ley through a quit-claim deed.

{¶93} A quit-claim deed "has the force and effect of a deed in fee simple to the grantee, the grantee's heirs, assigns, successors . . . without covenants of any kind on the part of the grantor." R.C. 5302.11. Because the parties' rights were clearly established by law, the trial court correctly determined that broad equitable principles do not alter the legal effect of the deed.

{¶94} For these reasons, the trial court did not err in granting summary judgment to Ley on the Szabrak Plaintiffs' partition claim. The Szabrak Plaintiffs' third assignment of error is overruled.

I.

{¶95} In their first assignment of error, the Szabrak Plaintiffs argue the trial court committed erred in granting summary judgment to Ley and Vogel on their resulting trust claim. We disagree.

{¶96} A resulting trust is a type of implied trust that a court of equity declares to exist when legal title to property is transferred or acquired by one under facts and circumstances indicating that the beneficial interest was not intended to be enjoyed by the holder of the legal title. *Ohman v. Ohman*, 2001-Ohio-7050, * 7 (5th Dist.). A resulting trust "has historically been applied to three situations: (1) purchase-money trusts; (2) instances where an express trust does not exhaust the res given to the trustee; and (3) express trusts which fail, in whole or in part." *First Nat'l Bank of Cincinnati v. Tenney*, 165 Ohio St. 513. 516 (1956).

{¶97} The latter two circumstances are not present in this case, as there was no attempt to create an express trust. Instead, the Szabrak Plaintiffs contend that a

purchase-money resulting trust was created. A purchase-money resulting trust arises "where a transfer of property is made to one person and the purchase price is paid by another." *PNC Bank, N.A. v. Lewis*, 2013-Ohio-5308, ¶ 10 (5th Dist.).

{¶98} The trial court determined that the Szabrak Plaintiffs' resulting trust claim is barred by the statute of limitations because it is based upon the same allegations of fraud underlying the fraudulent inducement claim. We agree.

{¶99} The applicable statute of limitations is determined by the cause of action rather than the form of remedy. *Id* at ¶ 12. "Statutes of limitation attach to causes of action and not in the remedial form in which the action is brought." *Peterson v. Teodosio*, 34 Ohio St.2d 161, 172 (1973). As discussed above, the Szabrak Plaintiffs' claim for fraudulent inducement is barred by the four-year statute of limitations set forth in R.C. 2305.09. The equitable remedy of a resulting trust is, therefore, also barred by the statute of limitations.

{¶100} The Szabrak Plaintiffs argue that the trial court erred because fraud is not required to impose a resulting trust. Although the Szabrak Plaintiffs included a separate claim for resulting trust in their complaint, a resulting trust is an equitable remedy, not an independent claim. *PNC Bank, N.A. v. Lewis*, 2013-Ohio-5308, ¶ 9 (5th Dist.); *Summers v. Summers*, 121 Ohio App.3d 263 (4th Dist. 1997). While it is true that fraud is not always required for a resulting trust, a resulting trust may only be imposed where there exists an underlying cause of action that supports the equitable remedy. *Id.* The fraudulent inducement claim is barred by the statute of limitations, so that claim no longer exists. So, too, any equitable remedy arising from a resulting trust no longer exists.

{¶101} The primary case cited by the Szabrak Plaintiffs, *Brate v. Hurt*, 174 Ohio App.3d 101 (12th Dist. 2007), involved the imposition of a resulting trust as a remedy for

unjust enrichment. However, the Szabrak Plaintiffs did not assert an unjust enrichment claim in their complaint.

{¶102} The Szabrak Plaintiffs further argue that a resulting trust may be imposed in connection with the partition claim. As discussed above, the Szabrak Plaintiffs cannot satisfy the threshold requirements necessary to maintain a partition action.

{¶103} As noted above, the partition action is based upon the same allegations of fraud – namely, that Ley fraudulently induced Decedent to convey a one-half interest in the Property in 2013 by promising to transfer the interest to Decedent's children upon her death. Because the resulting trust claim arises from the same alleged fraudulent conduct that occurred in 2013, it is barred by the four-year statute of limitations.

{¶104} Further, an examination of paragraphs 42-45 of the complaint demonstrates that the Szabrak Plaintiffs specifically sought a resulting trust over *Vogel's* future interest in the Property. They contend that *Vogel's* future interest should not be retained by him as a matter of equity and should instead be placed into a resulting trust for the benefit of Decedent's children.

{¶105} However, Vogel never acquired any interest in the Property because Ley was still alive when the Property was sold. Under R.C. 5302.23(B)(4), "[t]he designation of a transfer on death beneficiary has no effect on the present ownership of real property, and a person designated as a transfer on death beneficiary has no interest in the real property until the death of the owner of the interest." The Second TOD Affidavit did not transfer any interest to Vogel, because Vogel's interest would have vested only upon Ley's death. *Concord Village Skilled Nursing & Rehab., Ltd. v. Lundquist*, 2025-Ohio-5097, ¶ 53 (11th Dist.); *Galavich v. Hales*, 2022-Ohio-1121, ¶ 56 (7th Dist.). As a result, there is no property interest upon which a resulting trust could be imposed. A resulting trust cannot

be based on the partition action as it relates to Vogel's interest because Vogel never had an interest in the Property, never had title to any part of the Property, and never was in possession or had the right to immediate possession of the Property.

{¶106} Because a resulting trust is an equitable remedy and there are no independent claims upon which the Szabrak Plaintiffs could base their request for a resulting trust, the trial court did not err in granting summary judgment on the Szabrak Plaintiffs' request to impose a resulting trust.

IV.

{¶107} In their fourth assignment of error, the Szabrak Plaintiffs argue the trial court erred in granting Ley's and Vogel's motion to strike the unsworn statements attached to their summary judgment filings. We disagree.

{¶108} The decision whether to grant or deny a motion to strike in the summary judgment context is governed by the abuse of discretion standard of review. *Thiemens v. Grange Mut. Cas. Co.*, 2013-Ohio-1643 (5th Dist.); *Oeffner v. Marc Glassman*, 2025-Ohio-1610, ¶ 77 (5th Dist.). To find an abuse of discretion, we must find the trial court's decision was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶109} Civil Rule 56(C) limits the types of evidence that may be considered on summary judgment to depositions, answers to interrogatories, written admissions, transcripts of evidence, and written stipulations of fact. If a document does not fall within those categories, it may only be considered if it is properly incorporated into an affidavit that satisfies Civ.R. 56(E). *Doe v. Robinson*, 2010-Ohio-5894 (6th Dist.)

{¶110} The Szabrak Plaintiffs contend that the affidavits of the individuals who recorded the conversations, in combination with the court reporter's certification of the transcripts, is sufficient to meet the requirements contained in Civ.R. 56(E).

{¶111} A creative evidentiary twist to be sure, however, Ohio law supports the trial court's determination that unauthenticated recordings and unsworn statements are not proper Civil Rule 56 evidence. The *Doe* Court held that Civ.R. 56 does not permit the submission of unauthenticated tape recordings or unsworn statements in support of summary judgment. *Doe* at ¶ 64. Similarly, an affidavit from a person stating that they were present during a recorded meeting, and that the conversation reflected in the transcript was accurate, does not transform the recording into proper Civil Rule 56 evidence. *Leibold v. City of Columbus*, 1977 Ohio App. LEXIS 8173 (10th Dist.).

{¶112} In this case, none of the individuals involved in conversations with Decedent were placed under oath during the conversations. The statements attributed to Decedent were not sworn testimony, and Decedent himself did not authenticate the transcripts. In fact, William testified that neither Decedent nor Ley knew the conversations were being recorded. The court reporter's certification does not render the recordings admissible. The certification merely confirms that the reporter transcribed the recording; it does not attest to the truth or veracity of the statements contained therein.

{¶113} Similarly, the affidavits submitted by Decedent's children do not cure the defect. Civil Rule 56(E) requires affidavits to be based on "personal knowledge", which for purposes of a summary judgment affidavit is defined as "knowledge of truth in regard to a particular fact or allegation that does not depend on information or hearsay, i.e., it is knowledge that is original to the affiant." *Whitt v. Wolfinger*, 2015-Ohio-2726, ¶ 25 (4th

Dist.).  Here, Richard and William, as affiants, were not offering their statements - their own original knowledge – regarding Property issues.  And, of course, they could not place Decedent under oath or attest to the truth and veracity of Decedent's statements, vis-à-vis his original knowledge of issues surrounding the Property.  Certainly, Richard and William can attest that Decedent's statements - made in 2023 while he was hospitalized - were made in their presence and accurately portrayed the conversation, but they cannot meet the Civ.R. 56(E) original knowledge requirement.  This is nothing more than an ineffective way to subvert a classic hearsay problem.

{¶114} Accordingly, the trial court did not abuse its discretion in striking the transcripts of the audio recordings.

*Harmless Error*

{¶115} Even assuming the trial court erred in striking the transcripts of the recordings, any such error is harmless.

{¶116} Pursuant to Civil Rule 61, an evidentiary error warrants reversal "only upon a determination that its admission affected a substantial right or was inconsistent with substantial justice."  Civil Rule 61; *City of Cincinnati v. Banks*, 143 Ohio App.3d 272, 290 (1st Dist. 2001).  Where the trial court would have reached the same result regardless of the challenged evidence, the error is harmless.  *Hallworth v. Republic Steel Corp.*, 153 Ohio St. 349, 349 (1950).

{¶117} The Szabrak Plaintiffs argue the transcripts of the recordings should have been admitted because: (1) there is not a hearsay issue because Decedent's statements are not offered for the truth of the matter asserted, but are offered to show that Decedent was not aware that Ley executed the Second TOD Affidavit; or (2) even if Decedent's statements are hearsay, they fall within the hearsay exception contained in Evid.R.

804(B)(5) because Decedent's statements are being used to rebut the statements of Ley that she told Decedent about the Second TOD Affidavit.

{¶118} However, whether Decedent knew about the Second TOD Affidavit is ultimately immaterial. As discussed above, the alleged fraudulent inducement occurred in connection with the 2013 quit-claim deed. By 2015, when the Second TOD Affidavit was executed and recorded, the transfer of the property interest had already been completed. Decedent did not take any action or make any agreement with Ley after 2013. Thus, no subsequent statements or omissions by Ley could have induced Decedent to execute the 2013 deed, and any error in excluding the transcripts of the recorded conversations is harmless.

{¶119} The substance of the recorded conversations also confirms any error in the exclusion of this evidence is harmless. The conversations reflect that the parties were discussing the alleged agreement made in 2013, under which Decedent conveyed a one-half interest in the Property to Ley based on her alleged promise to transfer that interest to his children upon her death. There was no 2023 transaction, and Decedent did not justifiably rely upon any actions or omissions of Ley at that point because the transfer of the one-half interest in the Property to Ley was completed in 2013.

{¶120} Further, there were no omissions or material misrepresentations made by Ley during these conversations. Ley was not present for the conversation on November 23, 2023. During the November 28, 2023, conversation, Ley clearly stated it was her expectation that when Decedent died, she would get half the house because she has "been there and done everything for 18 years." Decedent discussed giving Ley $20,000 to help pay for utilities if she chose to stay in the Property after his death, but informed Ley she would have to pay for the utilities after that. Ley responded, "okay." However, no new

"transaction" occurred because Decedent never gave Ley any money. The recordings do not establish any new act of fraud, any new transaction, or any justifiable reliance by Decedent.

{¶121} For these reasons, any error in striking the transcripts of the recordings was harmless. The Szabrak Plaintiffs' fourth assignment of error is overruled.

{¶122} Based on the foregoing, the Szabrak Plaintiffs' assignments of error are overruled. The judgment entries of the Richland County Court of Common Pleas are affirmed.

For the reasons stated in our Opinion, the judgment of the Richland County Court of Common Pleas is affirmed.

Costs to Appellants, the Szabrak Plaintiffs.

By: Popham, J.

Baldwin, P.J. and

Montgomery, J., concur